TULL et al. v. NASH et al.

(Circuit Court of Appeals, Ninth Circuit. November 13, 1905.)

No. 1,189.

1. APPEAL—NECESSARY PARTIES.

An appeal will not be dismissed because of the failure to bring in by citation parties who have no interest in the decree appealed from.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, § 1815.]

2. SAME—REVIEW—REFUSAL TO PERMIT INSPECTION OF DOCUMENT.

A party cannot assign as error that he was not permitted an inspection of a contract which had been introduced in evidence by the adverse party, who had been permitted to withdraw it from the records on substituting a copy, where he took no steps in the trial court to obtain such inspection.

3. ATTORNEY AND CLIENT—CONTRACT FOR FEES.

The fact that attorneys, who have contracted with a client to represent her interest in litigation for the recovery of certain property for a contingent fee based upon the amount recovered, made such client a defendant in the final partition suit relating to the property, for the sole purpose of having the amount of their fee, which was in dispute, determined, did not amount to a repudiation of the contract, nor deprive them of the right to recover the fee stipulated therein.

4. SAME—SERVICES RENDERED TO MINOR.

Attorneys representing certain heirs in litigation respecting real estate, who obtained the appointment of a guardian ad litem for another heir, who was a minor and was made a defendant, such attorney ad litem appearing on behalf of his ward and being allowed a fee therefor by the court, cannot thereafter claim compensation from the minor on the ground that their services inured to his benefit.

Appeal from the Circuit Court of the United States for the Eastern Division of the District of Washington.

The appeal in this case brings before the court a branch of the case which was here on appeal and decided in German Savings & Loan Society v. Tull (C. C. A.) 136 Fed. 1. The appeal involves the claims of Lucius B. Nash and Lucius G. Nash, copartners as Nash & Nash, against the three Tull children, William L. Tull, Dora May Seeley (formerly Dormitzer), and Ernest B. Tull, for attorneys' fees. In 1897 Nash & Nash, as attorneys for Dora May Dormitzer and William L. Tull, brought suit in the superior court for Spokane county, state of Washington, against the German Savings & Loan Society and others, making Ernest B. Tull, a minor, a party defendant. The object of the suit was to obtain a decree restoring one-half of certain property to the three children. W. M. Murray, an attorney at law, was appointed guardian ad litem for Ernest B. Tull. The case was decided against the three children, but on appeal to the Supreme Court of the state of Washington the decree was reversed, and the children were held to be entitled to an unincumbered, undivided, one-half interest in the property. The German Savings & Loan Society took the case by writ of error to the Supreme Court of the United States, where the decree of the Supreme Court of the state of Washington was af-

firmed. German Savings & Loan Society v. Dormitzer, 192 U. S. 125, 24 Sup. Ct. 221, 48 L. Ed. 373. In the year 1901, Dora May Dormitzer, William L. Tull, Lucius B. Nash, and Lucius G. Nash, as plaintiffs, brought a second suit in the state court of Washington against the German Savings & Loan Society, Ernest B. Tull, a minor, and others, for the partition of the property and an accounting. The suit was removed to the Circuit Court of the United States for the District of Washington, and a decree therein was rendered for the complainants, but on appeal to this court it was held that the cause had been improperly removed from the state court, and it was ordered remanded to that court. In June, 1902, the present suit for partition and accounting was brought in the Circuit Court of the United States for the District of Washington. The complainants were William L. Tull and Nash & Nash; William L. Tull appearing therein by Nash & Nash. The defendants were the loan society, Dora May Seeley, and Ernest B. Tull. In the bill of complaint, in addition to the relief which was sought against the German Savings & Loan Society, Nash & Nash set up their claim for attorney's fees against their client William L. Tull for 50 per cent. of the amount recovered for him in the litigation, their claim against Dora May Seeley for 35 per cent. of the amount recovered for her, and their claim for such amount as the court might decree them to be entitled to as attorneys' fees for services rendered to Ernest B. Tull. F. W. Dewart was appointed guardian ad litem for the minor, Ernest B. Tull. He appeared also as attorney for Dora May Seeley, and represented William L. Tull as against the claim of Nash & Nash. Testimony was taken on the subject of the employment and the amount of the attorney's fees of Nash & Nash. The Circuit Court, without making findings of fact or filing an opinion, rendered a decree awarding Nash & Nash 50 per cent. of the property recovered by William L. Tull, 35 per cent. of that recovered by Dora May Seeley, and $2,000 from that recovered on behalf of Ernest B. Tull. The present appeal brings before the court the question whether the court erred in so awarding attorney's fees.

The bill of complaint had for its primary purpose the decision of the question of the claim of lien of the German Savings & Loan Society for improvements placed upon the property. That question was determined on the prior appeal to this court. On the subject of their attorney's fees the bill of complaint on behalf of Nash & Nash alleges that they undertook the original litigation for William L. Tull and Dora May Seeley under agreements by which they were to receive fees contingent upon success therein, amounting to 50 per cent. of the amount recovered for William L. Tull, and 35 per cent. of the amount recovered for Dora May Seeley. On February 5, 1903, Nash & Nash, by leave of court, filed an amendment to the bill of complaint, in which it is alleged that at the time of their employment as counsel for William L. Tull and Dora May Seeley the latter requested and employed them to take charge of and secure the rights and interests of said Ernest B. Tull, upon an understanding between all parties that said Ernest B. Tull should make such compensation as their services and the results should justify, and that by the diligence and care and labor of said attorneys a guardian ad litem was appointed for Ernest B. Tull in the present suit, and that the said Ernest B. Tull accepted their work and labor. They allege, further, that they represented the interest of said Ernest B. Tull in the suit in the Supreme Court of the United States above referred to, and that a reasonable compensation for their services for him is the sum of $5,000. To that amendment Ernest B. Tull, by his guardian ad litem, F. W. Dewart, made answer, alleging his minority, and submitting his rights and interests to the protection of the court.

Frederick W. Dewart, for appellants.
Nash & Nash, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellees interpose a motion to dismiss the bill, on the ground that no service of the citation was made on certain of the parties defendant who had asserted claims against the Tull heirs and their estate, and as to whom there was no severance and summons, and no appearance or representation on the appeal. The appellees cite Davis v. Mercantile Trust Co., 152 U. S. 590, 14 Sup. Ct. 693, 38 L. Ed. 563, as authority for the rule that all parties to the record, who appear to have any interest in the order or decree challenged, must be given an opportunity to be heard on the appeal. The answer to the motion to dismiss is that it does not appear from the record that the omitted parties have any interest in the decree which is appealed from. The decree does not affect them or their claims. They could have no standing to appear in this court and object to the relief which the appellants seek, nor could they have any interest in appearing here to ask the court to sustain the decree of the court below. The motion must be denied.

A motion is made to strike from the files of this court the record, and the certificate thereto of A. Reeves Ayres, the clerk, for the reason that said clerk was not the legal or actual custodian of the record and proceedings in the cause; said record and proceedings being in the custody of the clerk of the Circuit Court of the Eastern District of Washington. The cause was tried in the late Circuit Court for the District of Washington, Eastern Division. The act of Congress dividing the state into two districts went into effect on March 2, 1905. The decree in the court below was entered May 23, 1904. The appeal was allowed November 18, 1904. Before the transcript was certified the law dividing the district had gone into effect. The certificate was made by the clerk of the Western District of Washington, who had been also the clerk of the former Circuit Court for the District of Washington. The time to file the transcript was extended by orders duly made until March 30, 1905. Before that time expired the transcript was filed, but, question having arisen as to the due certification of the transcript, on March 24th an order was made extending the time to file the transcript, which was duly followed by another order extending the time until July 1, 1905. On May 8, 1905, an order was made permitting the appellants to withdraw the transcript for further certification. It was so withdrawn, and certified by the clerk of the Eastern District of Washington, and returned to this court. Thereafter, on July 1, 1905, was filed the motion to strike, which is under consideration. It is not necessary for us now to pause to determine by which clerk the transcript should have been certified. It is sufficient to say that it was certified by both, and is therefore properly here for our consideration. The motion is denied.

Concerning the award to the attorneys Nash & Nash for services to Wm. L. Tull, we find no ground to question the correctness of the decree of the Circuit Court. Nash & Nash produced in evidence a written instrument signed by William L. Tull in April, 1897, in which he agreed to pay them 50 per cent. of the sum recovered in any litigation upon the claim which was then pending in the suit in the superior court of Spokane county, Washington. The deposition of Wil-

liam L.. Tull was taken concerning his contract with Nash & Nash. It appeared that at the time of making the contract he was in the penitentiary in California, and that the agreement was made at the instance of Nash & Nash, who sent an agent to him for that purpose. He testified that the agreement was that he was to pay the attorneys one-third of the amount recovered, and that, if the contract which was signed provided for the payment of a larger percentage, it was procured by fraud practiced upon him by the agent. The paper plainly calls, however, for 50 per cent. of the amount recovered, and we find no evidence, other than the bare statement of William L. Tull, that fraud was practiced upon him. His counsel in this case objects to the evidence of the contract, on the ground that it is a copy, and not the original instrument. It appears that the contract was offered in evidence before the examiner at a time when William L. .Tull was not represented by counsel, and that after exhibiting the original contract Nash & Nash requested that the examiner make a copy to take the place of the original in the record. Subsequently counsel for William L. Tull demanded that the original contract be produced and filed in evidence. Nash & Nash declined to surrender it. Counsel for William L. Tull said.

"I don't ask you to surrender it to me. I ask you to put it in the case. I object to a copy of the contract going in; it is not the best evidence. If you have the original, that has to go in."

Judge L. B. Nash, who was then on the witness stand, said:

"If you want any papers, you can take the legal steps to secure them. If that contract has got to go in evidence, it can go in. Anybody can look at it."

Counsel for William L. Tull now complains that he was not allowed an inspection of the original contract. This does not appear to be sustained by the evidence. The objection of Nash & Nash was not to an inspection of the contract by opposing counsel, but to the surrender of it as evidence in the case. Counsel for William L. Tull had his remedy to obtain an inspection of the paper. Not having pursued that remedy, he cannot now complain that it was not submitted to his inspection.

As to the attorney's fees to be paid by Dora May Seeley, her testimony is direct and positive that she was given to understand, and always understood, that Nash & Nash were to receive one-fourth of her estate for their services, and that she had an arrangement with them to that effect: She said:

"I knew Judge Nash and his family intimately when I was a girl in Spokane, and I therefore put a great deal of confidence in him, and when I was assured my portion of the case would be handled for 25 per cent., did not think a contract was necessary, and, as before stated, in all my conversations with Nash & Nash it was always expressed and implied that they were to receive 25 per cent. of my interest in the suit, if it was won."

She deposed further that she never knew they claimed any more than that amount until in January, 1901, while she was living in Chicago, she learned that they had filed an attorney's lien for 35 per cent., and that then, on January 29th, she wrote them a letter of protest. She said:

"I wrote them that I had just learned from a Spokane newspaper that they had filed a lien against my interest for 35 per cent. I wrote them that I did not understand why they had done this; that I had agreed to give them a smaller sum, which was a good and fair fee; that I wanted to treat them fairly, and I wanted to know at once why they had named 35 per cent., and to give me also a complete statement of the case. I received a letter from them saying there was a good deal more work to be done in the case, and asking me what compensation I considered proper, and what I was willing to give. I have never heard from them since."

Judge Lucius B. Nash testified that the agreement and understanding with Dora May Seeley was that they should receive from her 35 per cent. of the amount recovered in her behalf. Lucius G. Nash testified that that agreement was reduced to writing and signed by Dora May Seeley at her house in April, 1897, he and she only being present, but that the contract had been lost and could not be found. Neither Lucius B. Nash nor Lucius G. Nash denied that they had received from Dora May Seeley her letter of January 29, 1901, in which she had protested against the amount they claimed in their attorney's lien, nor that they had written her in response thereto asking what compensation she considered proper, and was willing to give. As far as the evidence goes, that correspondence stands admitted. In view of that fact and the fiduciary relation already existing between Dora May Seeley and her attorneys at the time when the agreement was made, we are of the opinion that the court erred in allowing Nash & Nash more than 25 per cent. of the amount recovered on behalf of Dora May Seeley, and that probably the attorneys were in error in their recollection as to the terms of their contract; it not having been shown that their memory had been refreshed by an inspection of the written contract testified to by Lucius G. Nash at any time after its execution. They urge that the denial of the execution of the contract by Dora May Seeley in her deposition is a qualified one. She was asked, "Did you, in the Spring of 1897, execute a contract with Nash & Nash to represent you in that litigation?" to which she answered, "To the best of my recollection, I never executed any such contract; and, if such a contract was executed, I think I would remember it." The question propounded to her was not whether she had executed a contract for 35 per cent., but whether she had executed any contract; and her answer must be considered in the light of that question. She testified to numerous conversations with Nash & Nash about the matter of fees and to the general understanding as to what the amount of the fees should be, and it might well be that her memory was not very clear as to whether or not that general understanding had been reduced to writing. But we are not warranted in construing her answer as an admission that she might have signed a written contract providing for the payment of 35 per cent.

It is urged by counsel for Dora May Seeley that Nash & Nash cannot recover the full amount of the 25 per cent. agreed to be paid by her, for the reason that said attorneys did not represent her in the present suit, which is a part of the litigation contemplated in the agreement, but made her a party defendant, thereby compelling her to employ other counsel to represent her herein. So far, however, as the principal object of the present suit was concerned, the deter-

141 F.—36

mination of the claim of the German Savings & Loan Society, the services of Nash & Nash inured to the benefit of all the Tull heirs. It is not shown that Dora May Seeley objected to the arrangement by which she was made a party defendant. At that time she had an interest in the suit antagonistic to Nash & Nash, inasmuch as she questioned the amount which they claimed as attorney's fee. For that reason it was proper that she should be represented by other counsel. We do not think that the fact that she was represented by other counsel in the present suit, or the fact that she was made a party defendant herein, amounts to a repudiation of the original contract on the part of Nash & Nash, or affords ground to reduce the amount of the compensation which they were to receive from her.

At the beginning of the litigation Ernest B. Tull was a minor. In their amendment to the bill Nash & Nash alleged that Dora May and William requested and employed Nash & Nash to look after the interests of Ernest B.; that they secured the appointment of a guardian ad litem in the state court and in the former suit which was removed to the United States court, and that they will secure one for him in the suit in the United States Supreme Court. Nash & Nash both testified that Dora May, William, and their father, F. M. Tull, engaged them to look after the interests of Ernest B., and that they acted as attorneys for W. M. Murray, the guardian ad litem. It is clear, however, that such an employment by the relatives of the minor could not bind his estate. So far as asking the court to appoint a guardian ad litem for Ernest B., a defendant in the original suit or in the succeeding suit in the United States court, is concerned, the services of Nash & Nash cannot be regarded as services to be compensated out of Ernest B.'s estate. He being a defendant in the suit, it was necessary that a guardian ad litem be appointed to represent his interest, and it was in the ordinary course of business and for the advantage of the complainants to ask for such an order. W. M. Murray, the guardian so appointed, was an attorney at law, and the testimony shows that he actively participated in the litigation on behalf of his ward. At the termination of the litigation in the state court, a final decree was rendered by the superior court of Spokane county, in accordance with the mandate of the Supreme Court of the state of Washington, in which it was recited as follows:

"Lucius G. Nash, of the firm of Nash & Nash, being present and participating in the hearing and testifying therein at his own request, and the said Nash & Nash not having presented to said guardian ad litem, or filed with the court, any claims for fees or expenses as attorneys for said guardian ad litem, and said L. G. Nash having refused to present any such claim at the hearing, and having heard proofs in the matter, the court finds that $5,000 is a reasonable sum to be allowed to said William M. Murray for his compensation as guardian ad litem, and for all charges, expenses, and obligations incurred by him in the discharge of his duties as such guardian ad litem, including any claim which Nash & Nash may have for fees or expenses as attorneys."

And the court adjudged and decreed that said William M. Murray be allowed the sum of $5,000 "as compensation for his services as guardian ad litem for Ernest B. Tull in this cause, and for all expenses, charges, and liabilities incurred by him in the discharge of his

duties." That decree effectually precludes Nash & Nash from claiming any allowance as attorney's fees in connection with litigation which terminated in the decree so rendered. We find no evidence whatever in the record that they have performed services for Ernest B. Tull since the date of that decree, such as to justify the court in awarding them compensation from his estate. They made him a party defendant to this suit. A guardian ad litem was appointed to represent him, and in all the litigation of this suit that guardian ad litem, as an attorney at law, has appeared on behalf of Ernest B. Tull, and no one else has appeared as his attorney. It is true that for themselves and William L. Tull, Nash & Nash sought relief which has resulted in benefit to the estate of all the Tull children, but the fact that the benefit obtained by attorneys on behalf of their clients operates to the advantage of other parties not represented by them is of itself no ground for charging such other parties with attorney's fees. Especially is this true where such other party is a minor. In their amendment to the bill Nash & Nash refer to services for Ernest B. Tull in the case which was taken to the Supreme Court of the United States. Issue was taken upon that allegation, and no evidence whatever was offered to sustain it. This court is in possession of no information as to' services rendered in that suit by said attorneys as representing Ernest B. Tull or his guardian ad litem. We are of opinion, therefore, that that portion of the decree which awards Nash & Nash $2,000 for services rendered to Ernest B. Tull is not sustained by any proof, and must be reversed.

The decree is affirmed as to William L. Tull, is modified as to Dora May Seeley so as to charge her estate with but 25 per cent. thereof in favor of Nash & Nash, and as to Ernest B. Tull it is reversed.