## DAVIS v. SENECA FALLS MFG. CO. et al.

(Circuit Court of Appeals, Second Circuit. February 7, 1927.)

### No. 92.

1. **Corporations** ⊗⇒544(1)—**Insolvent corporation's sale of mortgage bonds to unsecured creditor, proceeds being used to pay unsecured debt, held void preference (Stock Corporation Law N. Y. § 15).**

Where corporation while insolvent, or when insolvency was imminent, by formal exchange of letters arranged a sale of mortgage bonds to a bank holding corporation's unsecured note, the proceeds of such sale being used to pay corporation's indebtedness, evidenced by note, *held*, transaction resulted in a preference, and was void, under Stock Corporation Law (Laws N. Y. 1923, c. 787) § 15.

2. **Corporations** ⊗⇒544(5)—**Under statute, where corporation is insolvent, intent of creditor receiving payment to obtain preference, or his knowledge of insolvency, or even intent of corporation, is immaterial (Stock Corporation Law N. Y. § 15).**

Under Corporation Law (Laws N. Y. 1923, c. 787) § 15, where it is clear that corporation was insolvent, or that insolvency was imminent, and that payment was given as a preference, the intent of the creditor, or his knowledge of insolvency of the corporation, or even the intent of the corporation, is immaterial.

3. **Corporations** ⊗⇒545(8)—**Transaction involving corporation's sale of bonds to officer's wife and payment of debt due officer with proceeds held giving of unlawful preference (Stock Corporation Law N. Y. § 15).**

Where corporation, while insolvent or when insolvency was imminent, sold bonds to its president's wife, the proceeds being used to pay pre-existing debt due the president and bonds being deposited as collateral for note given by wife to obtain purchase money, which note corporation president said he was standing back of, *held*, transaction was in effect the giving of an unlawful preference to corporate president, in violation of Stock Corporation Law (Laws N. Y. 1923, c. 787) § 15.

4. **Corporations** ⊗⇒544(1)—**Sale of bonds of insolvent corporation to bank director, and payment of proceeds on unsecured debt of bank, held giving of unlawful preference (Stock Corporation Law N. Y. § 15).**

Where corporation, while insolvent or when insolvency was imminent, sold mortgage bonds to director and stockholder of bank, and paid proceeds to bank in satisfaction of pre-existing unsecured debt, *held*, transaction constituted the giving of an unlawful preference, in violation of Stock Corporation Law (Laws N. Y. 1923, c. 787) § 15.

5. **Receivers** ⊗⇒194—**Allowance of fees to attorneys for unsecured creditors, whose labor benefited other creditors, held improper.**

In receiver's proceeding, allowance of fees to attorneys for certain unsecured creditors *held* improper, notwithstanding such attorneys' services incidentally benefited other creditors.

Appeal from the District Court of the United States for the Western District of New York.

Suit by Evan Davis for appointment of receiver and conservation of assets of the Seneca Falls Manufacturing Company. From a decree (8 F.[2d] 546) denying preference to claims of Martin G. Grossman and others, and fees to attorneys for certain other creditors, Grossman and others appeal. Decree modified, and, as modified, affirmed.

Suit in equity for conservation of the assets of the defendant. A decree of distribution was entered on the 19th of March, 1926, ordering that the respective claims of the claimants be held to be unsecured debts. Claimants contend that they are secured cred-

itors, and appeal.' Appeal is also from that portion of the decree allowing fees to the attorneys for the National City Bank of New York and Irving Bank-Columbia Trust Company. Decree modified.

James M. E. O'Grady, for appellant Merchants' Bank of Rochester, N. Y.

Costello, Cooney & Fearon, of Syracuse, N. Y. (David F. Costello and Henry E. Wilson, both of Syracuse, N. Y., of counsel), for appellant Grossman.

Joseph R. Webster and Webster, Straus & Lamb, all of Rochester, N. Y., for appellant Adams.

George J. Skivington, of Rochester, N. Y., for appellees.

Shearman & Sterling, Merrill, Rogers, Gifford & Woody, C. Lansing Hays, and John N. Regan, all of New York City, for National City Bank of New York and American Exchange Irving Trust Co.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. Equity receivers were appointed in the above suit for the conservation of the property and assets of the Seneca Falls Manufacturing Company. A special master was appointed to take proof, ascertain, and report to the court the nature and extent of the claims and liens against the defendant. Creditors were required to file their claims, and, among these, the Merchants' Bank of Rochester filed its claim for $85,000, Grossman for $26,600, and Ruth M. Adams for $10,100. These claims were objected to. Proofs were taken before the master, and he reported, holding that these appellants were secured creditors. However, this was modified by the District Judge. He allowed the claims as of unsecured creditors, and they were so treated, and the final decree of distribution entered.

On the 6th of June, 1921, the defendant made a deed of trust to the City Bank Trust Company of Syracuse, as trustee, by which it conveyed all its real and certain of its personal property as collateral security for an issue of its bonds in the sum of $250,000. It was recorded on the 31st of August, 1921. The bonds were sold to purchasers and were delivered, all pursuant to resolutions of the board of directors of the defendant corporation, as collateral security for obligations of the corporation then and theretofore existing. The National City Bank of New York received $49,600 par value of bonds as collateral security for the demand note of the defendant which the bank then held; $24,000 of these

bonds were delivered to the Irving Bank-Columbia Trust Company as collateral security for the payment of a demand note which it held.

[1] On the 31st of August, 1922, $85,000 par value of these bonds were delivered to the Merchants' Bank of Rochester as collateral security for the payment of defendant's demand note held by this bank. The president of the Merchants' Bank was a large stockholder in the defendant corporation. He named Adams president of the defendant. The bank held a note for $85,000 prior to 1921. It held the stock of the defendant corporation as collateral, as well as the bonds issued, as referred to hereafter, to Adams, for $10,100. The president of the bank was intimately acquainted with the affairs of the defendant. He had been consulted about the second bond issue. He knew its financial condition in April, 1922, and the appeal then sent out by the directors of the defendant for aid in its financing. On August 9, 1922, after learning that the New York banks referred to, holding notes, would grant no further extension, in a formal exchange of letters, the defendant and this bank arranged for the sale of $85,000 of these bonds to the bank, the proceeds to be used to pay the company's indebtedness to the bank. Resolutions were passed, approving the transaction, and the sale was consummated through a dummy for the bank. The bank, an unsecured creditor, thus became a secured creditor.

The transaction was a preference, because the corporation was at the time of the payment insolvent, or its insolvency was imminent. The delivery and acceptance of the bonds was made with the intent of granting a preference to this particular creditor over other creditors of the corporation. Grandison v. Robertson (D. C.) 220 F. 985. The bonds were taken in the name of Mr. Standing, who acted for the bank. It is true that the money was advanced to the defendant, but it was repaid at once to the bank. It was doing indirectly what concededly the bank could not do directly. Robertson v. Chapman, 152 U. S. 673, 14 S. Ct. 741, 38 L. Ed. 592. The transaction must therefore be regarded as an effort by the bank to obtain the bonds as security for its indebtedness. At the time the transfers were made, in August, 1922, there were outstanding liabilities of the defendant amounting to $260,350. In addition, its capital stock outstanding was $575,000. Later there were attempts by the receivers to sell the property as a going concern. It was impossible to find a purchaser. A public auction was held in

June, 1923; the highest price then was $156,-000, and the bid accepted in November, 1923, was $151,000. This sale was confirmed. The officers of the bank well knew, or with the slightest diligence could have known, of the financial distress of the corporation.

In April, 1922, the president of the City Bank Trust Company, who acted as attorney for the defendant, stated that the company was in a weakened financial condition; it was having difficulty in meeting the demand for the moneys then owing to the New York City banks. As a result of a meeting then held, it was attempted to borrow $75,000. At this time a public statement was issued by the directors, showing its weakened financial condition and the need of ready money. It was found below that the appellants here knew or were charged with notice that the corporation was unable to meet its obligations as they matured in the ordinary course of business, and that it was unable to pay the note of the National City Bank, payment of which had been demanded. Section 15 of the Stock Corporation Law of the state of New York (Laws 1923, N. Y. c. 787) provides:

"No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * *

"Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees. * * *

"Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

[2] The transfer of the bonds to the Merchants' Bank was made in violation of this section. In making the transfer and delivery, the bank did what it was prohibited from doing by the statute. With the fact clear that the defendant was insolvent, or its insolvency was imminent, and that the payment was given on the part of the debtor as a preference, the intent of the creditor or knowledge as to the insolvency of the debtor, or, indeed, the intent of the debtor, is immaterial. Such is the result under the decisions in New York state. Perry v. VanNorden Trust Co., 118 App. Div. 288, 103 N. Y. S. 543; Rockey River Development Co. v. German American Brewing Co., 193 App. Div. 197, 184 N. Y. S. 155.

[3] Mrs. Adams was the wife of the president of the defendant. He was familiar with the company's financial distress and was trying to work it out. He knew the defect in the issuance of the bonds as collateral to his wife's note. He admitted that he had heard discussed the issue—the question of whether the bonds thus delivered were as good as if purchased outright because of his position in the company. He admitted he knew that in August, 1923, the bonds had not been legally issued; also that his company was insolvent. With this knowledge, on August 17, 1922, he arranged to have the Merchants' Bank advance the money on his wife's note for $10,-100. Giving the bonds as security for collateral was with the intent to prefer Adams. If he had taken the bonds directly, it could not be questioned but that the corporation had preferred its officers, and the transaction would have been void under section 15 of the Stock Corporation Law of New York state. On his own statement, his wife had no cash, and he said, "I am standing back of it." This transaction plainly violated the statute. In re Progressive Wall Paper Co. (C. C. A.) 229 F. 489, L. R. A. 1916E, 563; Billings v. Russell, 101 N. Y. 226, 4 N. E. 531.

[4] Grossman's bonds, prior to August, 1922, were owned by the City Bank & Trust Company of Syracuse. The board of directors of the defendant consisted of seven members. Three of them were directors of the City Bank & Trust Company. The trust company was a trustee under the mortgage securing these bonds. The president of the trust company was attorney for the defendant. He seems to have been directing the effort to restore its financial standing. The intimate relation of the directors of both the defendant and of this bank is shown by the further fact that on occasions the defendant held its meetings in the bank's offices. Grossman was a director and stockholder of the bank. He knew of the various loans of the bank to the defendant. He held stock in the defendant, and he may well be charged with knowledge of the defendant's financial condition in the statement of April, 1922. Geddes v. Anaconda Copper Mining Co., 254 U. S. 590, 41 S. Ct. 209, 65 L. Ed.

425; Corsicana Natl. Bank v. Johnson, 251 U. S. 68, 40 S. Ct. 82, 64 L. Ed. 141. He never talked with the officers of the defendant about buying the bonds, and after buying them on August 11, 1922, he never saw the bonds. He drew his check for $28,860.56 to the bank, and borrowed exactly that amount from the City Trust Company. Up to that time the trust company was an unsecured creditor of the defendant.

It is clear, from this transaction, the intent was to prefer the City Trust Company. The transaction was gone through solely for the bank. No benefit accrued to the defendant. Indeed, Grossman knew the transaction was for the benefit of the bank, as every known transaction to him indicated. He may not now be considered an innocent purchaser for a valuable consideration. He was not without notice of this fraud. The bonds thus originally issued as collateral security were, under section 15, invalidly issued. The trustee was a fiduciary for all bondholders. The actions of this trustee with the collaboration of this director were fraudulent.

The inability of the defendant to meet its liabilities existing and as they accrued in the course of business was an insolvent condition. Since the demands for payment made by the New York City banks were not met, the defendant, if not insolvent, was in such a position that insolvency was imminent. Under these circumstances, issuance and delivery of the bonds under section 15 of the Stock Corporation Law was invalid. They were given as collateral security for pre-existing indebtedness, contrary to the statute. Dean v. Davis, 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419; Seligman v. Gray (C. C. A.) 227 F. 417; In re Progressive Wall Paper Co. (C. C. A.) 229 F. 490, L. R. A. 1916E, 563.

[5] The allowance of $2,000 for fees to the attorneys for the New York banks was improvidently granted. They were not the attorneys for the receiver, and we must assume that they were properly retained to render services to their clients who were creditors only. By their labors they may incidentally have benefited the other creditors, but that does not justify an allowance for their services. The receivers were represented by counsel who successfully contested the claims. At no time, until the allowance was made, did they make claim for services rendered to the creditors generally. After the services had been rendered with success by the attorneys for the receiver, in having these transactions declared a preference, it was erroneous to grant an allowance to their counsel, who represented the banks who held bonds similar to those of the three appellants, but who have been classified as unsecured creditors.

The decree will be modified, by striking out the allowance of $2,000, and, as thus modified, is affirmed, without costs.