Argued March 19; reversed April 28, 1931

In re Gratton's Estate
## WILLIAMS *v.* GRATTON et al.
(298 P. 231)

*Martin L. Pipes* and *Herbert A. Cooke*, both of Portland, for appellant.

*John C. McCue,* of Portland (E. B. Seabrook, of Portland, on the brief), for respondents.

BROWN, J. In support of his petition for attorney fees, Mr. Seabrook testified:

"Q. And you have stated in your petition that you have performed certain services in connection with the trust created under the will of the late Isaac Gratton. For the record would you just state briefly to the court the nature and character of the services, and how you came to be engaged in those services on behalf of the estate and of the trust? A. Yes. Paul J. Gratton, the only son and heir of the decedent, employed me, at least he came to me and asked me to represent him in a suit which had been commenced in this court sitting as a court of equity, by the widow of the decedent, against the executor of the estate and others. The suit was for the purpose of having the court adjudge and declare that the real property of the estate which was described in the will, the title of which was held in the name of the Gratton Investment Company, was, in fact, real property belonging to the decedent at the time of his death, to establish the fact that the decedent died seized of that property, and asking for an admeasurement of dower in that real property. * * * Well, as soon as Mr. Gratton spoke to me of the matter and gave me the papers, I took it up with Mr. Cooke, who was attorney for the executor, and Mr. Freed. * * * Mr. Williams himself talked to me about the matter. He came to my office and consulted with me, not as his attorney, but as an attorney assisting his attorney."

As to the nature, extent and duration of the work performed in this suit the claimant testified:

"Well, the dower suit, as I called it, was commenced sometime in 1927, * * * I think it was in Septem-

ber;  *   *   *   and it was finally concluded in February,  *   *   *   1928, when the court sustained the demurrer which we filed.''

He testified that, immediately upon the termination of the dower suit, the widow instituted a suit in the equity side of the court, on the ground that the will created a perpetuity. With respect to the extent of the work which devolved upon him as an attorney in that suit, he testified:

''In that matter I joined with Mr. Cooke and Mr. Freed. At that time Judge Pipes was not in the case—that was before he entered the case; but Mr. Freed and Mr. Cooke and myself joined in a demurrer to this contest complaint.

*           *           *           *           *

''Q. Were extended briefs in the case necessary? A. Oh, yes, yes; we wrote briefs, but our endeavors were not successful. We worked hard, but the court was of the opinion that the will was not valid, because the testator undertook to devise real property which did not belong to him.

*           *           *           *           *

''Q. Now, the effect of the ultimate decision in the supreme court was to sustain the position you were taking in the lower court in these two instances? A. Yes; that my position in the lower court was ultimately sustained in the supreme court—not through any efforts of mine in the supreme court, because in the supreme court I appeared on the other side of the question.''

He testified that the value of the estate was approximately $200,000, and that a reasonable fee for his services was $5,000. When questioned with relation to the attitude of ''the beneficiary of this estate'' toward the allowance of that fee, he answered:

''The beneficiary? You mean my client, Paul?

''Q. Yes. A. He is not the only beneficiary. He is one of the beneficiaries. His attitude is that I should

have it. As a matter of fact, he has offered in writing that if that sum is advanced to me for my fee, that he would allow it to be charged against his interest in the estate. He has offered that in writing. He would pay it to me himself if he had the money, but he hasn't got it. He is unable to pay it.

"Q. Is he the principal beneficiary? A. Yes, he is, I would say, the principal; he gets most of the estate— more than anybody else under the will."

He testified that he had been paid nothing for his services. The question to be determined is this: Was the claimant an employee in the service of the estate during the proceedings for which he undertakes to collect compensation?

1. It is settled law in this state that the right of an attorney at law to collect compensation for his services depends upon the fact of his employment.

In the case of *In re Faling's Estate,* 113 Or. 6 (228 P. 821, 231 P. 148), we quoted with approval the following statement of the rule as set down in 2 R. C. L., at page 954:

"The creation of the relation of attorney and client by contract express or implied is essential to the right of the attorney to compensation. * * * The essential feature of the professional relation is the fact of employment to do something in the client's behalf. There must be an agreement, express or implied, for compensation."

As we stated in the Faling Case, the case of *Forman v. Sewerage & Water Board,* 119 La. 49 (43 So. 908, 12 Ann. Cas. 773), contains numerous decisions approving the rule of law laid down in 3 Am. & Eng. Ency. of Law (2d Ed.), at page 438, in the following language:

"Where one of several parties, all of whom are equally interested in a cause, employs an attorney to conduct the case for him, and the benefit of such ser-

vices, from the nature of the case, extends to all the other interested parties, the other parties, merely by standing by and accepting the benefit of such services without objection, do not become liable for the attorney's fees.''

In this connection, see the case of *Chicago, etc., R. Co. v. Larned,* 26 Ill. 218.

In our opinion in the Faling Case, supra, we also referred to, and approved the doctrine announced in, the case of *Westmoreland v. Martin,* 24 S. C. 238, where the court, in a clear and well-reasoned opinion, wrote:

"But we know of no law which can subject one to a charge for services which have not been authorized by him, neither directly nor through his representative. No legal claim for compensation can be founded upon services incidentally benefiting a party, other than the employer, as against that party, and because of the incidental benefit. * * * In such case, there might be some moral equity underlying the claim, but this equity has never yet been brought within the jurisdiction of the courts. It has been left to the moral sense of the party benefited.''

As authority for his position, the petitioner cites *McIntire v. McIntire,* 192 U. S. 116 (24 S. Ct. 196, 48 L. Ed. 369). In that case the testator left a residue, "to be equally divided between my brothers' * * * children.'' This provision in the will made necessary a construction of the question as to whether the children of the testator's brothers should take *per capita* or *per stirpes* under the residuary clause thereof. In that case the estate was charged with $11,500, fees paid to counsel for services in defending the will against the attack of the brother Charles and his son, this amount being paid in different sums, by orders of the court, "in several instances on the petition of the children of Edwin, one of whom was administrator with the will annexed, and was

directed to be charged against the interest of those children in the first instance, but without prejudice to an application to have it finally charged against the estate." When the claim was allowed, the fee was charged against the estate. As to the correctness of this procedure, the United States court says:

"We are of opinion that the charge was proper. * * * It was the proper business and duty of the administrator to defend the will, and he was entitled to a reasonable allowance for what he had to pay in doing so. The only just alternative would be to charge counsel fees as costs against the losing party, which would have been less favorable to the appellant. The general proposition is not disputed, but it is said that in this case the legatees retained the counsel and therefore ought to pay them. The other legatees as well as the administrator no doubt had a share in calling the counsel in. But that did not matter. The services were services to the estate in maintaining the testator's will, they were adopted by the administrator and the usual rule must prevail."

This case does not support the argument made on behalf of petitioner.

The general rule governing a recovery of compensation by an attorney is stated in 2 Thornton on Attorneys at Law at section 514, as follows:

"It is well settled that the employment of counsel by one of several heirs or legatees will not, of itself, create a liability on the part of the other heirs or legatees for the compensation of the counsel so employed, even though his services were beneficial to all of them, excepting where they have resulted in bringing a fund into court, and, under the local law, attorney fees may be allowed therefrom. Nor will the employment of an attorney by an heir or legatee create a liability on the part of the estate involved."

We direct attention also to the following pertinent excerpt from section 339, Weeks on Attorneys at Law (2d Ed.):

"An attorney cannot recover for professional services unless he can show in some way that he has been employed as such. The fact that his services in managing a cause are as beneficial to another party as to his own client will not raise an assumption against such other party, unless the services are accepted by the latter, and it was understood he was to be also liable."

Section 340 reads:

"It is necessary for the plaintiff to prove a retainer. The fact that his services rendered for some one else were also beneficial to the defendant is not enough, without proof of retainer by the latter."

To sustain his contention for the allowance of attorney fees, the petitioner also cites the case of *In re Johnson's Estate,* 100 Or. 142 (196 P. 385). In that case the court held that, where the executor, to whom letters testamentary were regularly issued, carrying on in good faith under what was presumed to be a valid will, "husbanded the estate, and the heir-at-law, a resident of a foreign country, paid no attention to the property, costs of a contest wherein it was determined the will was invalid were properly ordered paid out of the estate": Point 18, Syl. While this case is authority for the payment of costs and disbursements of an executor or administrator made for the preservation of the estate, it makes no reference to the payment of charges of volunteers, such as the petitioner's client herein.

Briefly summarized, the facts in the case at bar are substantially as follows: The petitioner filed a single claim for attorney's fees for his services in two cases, in the sum of $5,000. He testified that he could not segregate the charges. He appeared in three trials for

Paul Gratton, his client, each trial involving the Gratton estate. In the first, his client united his forces with the executor for the purpose of defeating, and did defeat, the claim of the widow for dower in certain real property. Thereafter, when a second suit was prosecuted by the widow in the nature of an attack upon the validity of the will, the client again joined forces with the executor and resisted the assault, but lost; the trial court declaring the will to be invalid. The executor appealed to this court, and, at this point in the proceedings, Gratton, apparently visioning a greater interest for himself in the two hundred thousand dollar estate by defeating the will, directed his attorney to unite his efforts with those attacking its validity. The petitioner obeyed the order of his employer, but the will was declared valid by this court. See *Gratton v. Gratton's Estate,* supra.

From the record herein, it is plain that Paul Gratton employed the petitioner, both in the lower court and in this court. It has been stated that petitioner's services were of benefit to the estate. Let us see. Had Gratton been successful in this court, he would have deprived other beneficiaries of any of the property involved, and he would have had, as the court below gave him, one-half of the personal property and all of the real property of the estate, subject to the dower of his mother. Under the law as hereinabove set out, and the facts and circumstances of the case as shown by the record, the petitioner is not entitled to compensation from the estate of Isaie Gratton. Paul Gratton employed him to act as his attorney, and from his interest in the estate his attorney should be compensated.

The decree appealed from is set aside.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.