Argued October 20, reversed and remanded November 24, 1954

IN THE MATTER OF THE ESTATE OF
PETER LAPPY, DECEASED
STATE LAND BOARD *v.* SOVENKO ET AL.
277 P2d 781

*Catherine Zorn,* Assistant Attorney General, of Salem, argued the cause for appellant. With her on the briefs was Robert Y. Thornton, Attorney General, of Salem.

*P. A. Schwabe,* of Portland, argued the cause for respondents. On the brief were Haas & Schwabe, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and LUSK, Justices.

LUSK, J.

This is an appeal by the state of Oregon acting through the State Land Board from an order of the Circuit Court for Multnomah County, Probate Department, allowing an attorneys' fee and certain costs and expenses.

On August 21, 1946, the United States National Bank of Portland (Oregon), administrator of the estate of Peter Lappy, deceased, filed its final account with said court in which it was averred:

"VI.

"That the Administrator of the estate and its attorney have diligently searched for heirs of the said deceased, and have been unable to find any in the United States, but have been advised that the deceased has heirs in the Union of Soviet Socialistic [sic] Republics; that notice has been served on the Administrator by the State Land Board of the State of Oregon that under the provisions of Section 61-107-OCLA the said heirs in Russia would be

unable to inherit and that the State Land Board of the State of Oregon claims an escheat in this estate.

"VII.

"After payment of such additional expenses as may be incurred in the closing of this estate, the compensation of the Administrator and of its attorney, E. F. Doyle, the State Land Board of the State of Oregon is entitled to have the balance of the money and property of the estate distributed to it in accordance with the provisions of Section 61-107-OCLA."

The administrator prayed for an order, inter alia, as follows:

"That upon payment of such additional expenses as may be necessary to closing this estate and the Administrator's fee and Attorney's fee as may be allowed by the court, The Administrator be authorized and directed to transfer and deliver unto the STATE LAND BOARD of the State of Oregon, the balance of the moneys and property remaining on hand."

The estate consisted entirely of personal property.

On September 10, 1946, the State Land Board filed a petition for an order escheating the clear proceeds of the estate to the state of Oregon.

Thereafter Kirill Grigorievich Sovenko and Tatiana Grigorievna Polozhanskaya, residents and nationals of the Ukrainian Soviet Socialist Republic, one of the republics of the Union of Soviet Socialist Republics, filed their answer to such petition praying that the estate be distributed to them as the sole next of kin and heirs at law of Peter Lappy, deceased, and also filed objections to the final account and petition for distribution based upon the same grounds. The claimants were represented by their attorneys, Messers Haas

and Schwabe. There was an extensive hearing in which the issue presented was whether or not, at the time of the death of Peter Lappy on January 27, 1946, the claimants could inherit personal property under the statute which makes the right of a nonresident alien to take personal property in this state by descent or inheritance dependent upon the existence of a reciprocal right upon the part of citizens of the United States to take personal property in like manner within countries of which such alien is an inhabitant or citizen. OCLA § 61-107. See *In re Estate of Krachler,* 199 Or 448, 263 P2d 769. The court held that there was no such reciprocal right at the time in question, and entered a decree escheating the clear proceeds of the estate to the state of Oregon, but further decreed that the claimants were entitled to recover from the estate "their costs and expenses hereby fixed and allowed in the sum of $502.55, and an attorneys' fee to Haas & Schwabe, their attorneys, hereby fixed and allowed in the sum of $2,000.00." It is from this portion of the decree that the state has appealed. The principal question is upon the propriety of the court's allowance of an attorneys' fee. Various items of the so-called "costs and expenses" are also challenged, though the state does not contend that the court did not have discretion to order claimants' statutory costs and disbursements to be paid out of the estate. We will consider first the question of attorneys' fees.

■ The general rule is that attorneys' fees are not recoverable except pursuant to a contract, express or implied, or unless provided for by statute. Here the attorneys had a contingent fee contract with the claimants, but it is not contended that this contract binds the estate. "It is a familiar rule", we said in *Re Faling Estate,* 113 Or 6, 17, 228 P 821, 231 P 148, "that the

right of an attorney at law to collect payment for his services depends on the fact of his employment." See, also, *In re Gratton's Estate,* 136 Or 224, 228, 298 P 231, 79 ALR 517. There is no statute authorizing allowance of the fee in question. If the order can be supported at all it is only by application of the doctrine of *Trustees v. Greenough,* 105 US 527, 26 L ed 1157, that a trust estate must bear the necessary expenses of its administration. The Supreme Court said in that case:

"" * * * It is also established by sufficient authority that, where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts. This has long been the rule in relation to proceedings for restoring property to the uses of a charity, which has been unjustly diverted therefrom."

See, to the same effect: *Kinney v. Uglow,* 163 Or 539, 584, 98 P2d 1006; *Re Faling Estate,* supra, 113 Or 20; *Wemme v. First Church of Christ, Scientist,* 110 Or 179, 212, 219 P 618, 223 P 250; 107 ALR 750, annotation.

In the Faling Estate case this doctrine was considered in its relation to a claim for compensation by attorneys who instituted and carried to a successful conclusion a suit for the purpose of having a will declared invalid and void on the grounds of mental incapacity and undue influence and securing the admission to probate of an earlier will. The attorneys had entered into a contingent fee contract with an heir and certain legatees. The court, in an opinion by Mr. Justice Brown which elaborately reviewed the authorities, concluded that the attorneys were entitled to a reasonable fee out of the estate on the theory that the

expense was incurred for the benefit of the estate as a whole, and that the case was to be distinguished from those holding "that when a contest is narrowed down to the personal interests of proponents and contestants, claims for attorneys' fees against the estate should be denied." (113 Or 33.) The following excerpt from the opinion shows why the court thought that the services of the attorneys benefited the estate:

"This is not a mere contest among the heirs and legatees in the matter of distribution of the estate. The contest proceedings preserved the real legacies and devises from destruction at the hands of Strong and Mead who had taken possession of the property under a fraudulent will. By virtue of the contest and the establishment of the will of 1911, the property of the estate was secured from the grasp of wrongful executors and fraudulent devisees and preserved for the Children's Home and the smaller legatees." (113 Or 32.)

The opinion in the Faling Estate case calls attention to the fact that the authorities are divided on the question of the allowance of attorneys' fees payable out of the estate to one contesting a will—some denying the right altogether, others making the allowance depend upon whether there is reasonable ground for the contest, and still others upon the contestant's success. See cases in annotations 69 ALR 1058, 1059, 10 ALR 806-809. In the Faling Estate case, as we have seen, attorneys' fees were allowed to the successful contestant.

In *In re Carlson's Estate*, 156 Or. 597, 68 P2d 119, we held that an estate should not be charged for expenses incurred by an executor in seeking to sustain a will which he did not honestly believe was the last will of the deceased. In *In re Lobb's Will*, 177 Or 162, 191, 160 P2d 295, we said that, provided an execu-

tor acts in good faith, the court has discretion to allow him, whether successful or not, the reasonable expenses incurred in defense of a will; but, as the executor claiming expenses in that case was the sole beneficiary under the will, which was set aside, we held that in seeking to sustain the will he was "subserving his personal interests alone" and that "The successful contestants ought not to be charged with his expenses in that regard." In *In re Gratton's Estate,* supra, 136 Or 232, an attorney employed by an heir of the deceased to contest a will and who was unsuccessful was denied compensation out of the estate. The decree in the Circuit Court was for the contestant, but on appeal this court reversed. We answered the contention that the attorney's services benefited the estate by observing that, had his client been successful, "he would have deprived other beneficiaries of any of the property involved, and he would have had, as the court below gave him, one-half of the personal property and all of the real property of the estate, subject to the dower of his mother." An executor who unsuccessfully resisted a contest of the will was allowed his costs and disbursements payable out of the estate in *In re Johnson's Estate,* 100 Or 142, 162, 196 P 385, 1115, for the stated reason that he had proceeded in good faith and had cared for the estate, the heir, who had never been in this country, being in no position to care for it. The court said (100 Or 163):

"* * * The usual objection to paying costs from an estate in a proceeding to contest a will is where the contestant is unsuccessful, and such a provision might tend to promote litigation. Here the situation is different. The will was probated in common form, and it was to the interest of all concerned that the question be finally settled and adjudicated."

The Gratton Estate case is cited, along with *Fields v. Fields,* 139 Or 41, 3 P2d 771, 7 P2d 975, and numerous cases from other jurisdictions, in the annotation, 71 ALR 521, as standing for the following proposition:

"The general rule is that no allowance may be made out of the estate of a deceased person for the services of an attorney not employed by the personal representative of the estate, where the services were rendered for the sole benefit of an individual or group of individuals interested in the estate."

*Fields v. Fields* was a suit to construe a will in which the construction contended for by the plaintiff was rejected by the court. An application by the plaintiff for the allowance of attorneys' fees to be paid out of the estate was denied. The court quoted as follows from 2 Thornton on Attorneys at Law § 514 (139 Or 55):

"It is well settled that the employment of counsel by one of several heirs or legatees will not, of itself, create a liability on the part of the other heirs or legatees for the compensation of the counsel so employed, even though his services were beneficial to all of them, excepting where they have resulted in bringing a fund into court, and, under the local law, attorney fees may be allowed therefrom. Nor will the employment of an attorney by an heir or legatee create a liability on the part of the estate involved."

The court recognized the general rule that "where a testator has expressed himself so ambiguously as to make it necessary or advisable to institute an action or suit to obtain a construction of the will, it is proper to order payment out of the estate, of reasonable fees of attorneys of the party instituting the action or suit." (79 ALR 536), but declined to follow it in that case, saying (139 Or 55) that the litigation did not "arise

from the use of obscure language by the testator in making his disposition of his real and personal property."

*In re Estate of MacMullen,* 117 Or 505, 243 P 89, 244 P 664, involved a claim of an administrator who had secured his appointment wrongfully. He resisted the petition of the heir for his removal and her own appointment. The court held that he was not entitled to attorney's fees chargeable to the estate because his expenses were not "incurred for the benefit of the estate as a whole." Among other authorities cited in support of the decision were *Upham v. Bramwell,* 105 Or 597, 209 P 100, 210 P 706, 25 ALR 919, and *Ford v. Gilbert,* 44 Or 259, 75 P 138, both involving insolvents. In the former case we held that there was no authority empowering a court which is administering a fund under its control to allow costs and attorneys' fees payable out of the fund for services performed by one creditor in establishing that he and all other creditors of a certain class are entitled to shares in the distribution of that fund. In *Ford v. Gilbert* we rejected a claim for the allowance of fees to attorneys who had represented the insolvent in bankruptcy and other proceedings brought against him by creditors. Both decisions are put upon the ground that the attorneys did not recover a fund for the benefit of the creditors or add to the assets being administered by the court.

In *Upham v. Bramwell* we approved the rule thus stated in 6 CJ 784, Attorney and Client § 394, and now carried into 7 CJS 1100, Attorney and Client § 193:

"* * * After the fund or property has been brought in and made available by the decree of the court, and nothing remains but its proper administration and distribution, contests which may arise between claimants, in respect to priorities or the right to share in the fund, are individual matters

involving antagonistic interests, and the counsel fees of those conducting such contests cannot therefore be made a charge on the fund or on the property, but must be paid by the parties themselves."

*In re Davis' Will*, 172 Or 354, 372, 142 P2d 143, was a will contest brought by a daughter of the deceased on the grounds of fraud, undue influence, and mental incompetency of the testator. The decision was against the contestant, but we affirmed an order allowing her the sum of $250 attorney's fees to be paid out of the funds of the estate. We said (172 Or 372):

"* * * A reasonable discretion over the allowance or refusal of attorney's fees in cases of this sort should rest with the probate court. In view of the facts and circumstances of this particular case, we see no sufficient reason for disturbing the court's order."

No authorities were cited.

Our most recent decision bearing upon this question is *Aamoth v. Larson, Executor,* 197 Or 267, 253 P2d 269, 34 ALR2d 1051, which was an appeal from an order of the probate court authorizing a widow's allowance and an atttorney's fee of $75. We affirmed the order authorizing the widow's allowance, but as to the attorney's fee we said:

"The court was in error, however, in awarding the widow $75 attorney's fees. There is no statute covering this matter nor do the decisions sustain the allowance. In some cases we have held that where the litigation in the probate of an estate is of benefit to the estate, attorney's fees may be allowed. In the present case, however, the support proceedings could in nowise be of any value to the estate; they were prosecuted solely for the widow's advantage. In re Faling Estate, 113 Or 6, 228 P 821, 231 P 148; In re Gratton's Estate, 136 Or 224, 298 P 231."

As this review of our decisions indicates, the rules governing the allowance of attorney's fees out of the estate of decedents go, perhaps, somewhat beyond the doctrine of *Trustees v. Greenough,* but, notwithstanding the apparent departure from the correct rule in the Davis will case (which is now disapproved), it still remains the law of this state that such an allowance is never authorized unless it can be seen that the services rendered benefited the estate as a whole. That a successful contest of a will may result in such a benefit is illustrated by the Faling will case, but it is difficult for us to perceive any benefit to an estate flowing from a losing venture of that kind. See *In re Gratton's Estate,* supra. And we agree with what was said by the Supreme Court of Washington in *In re Jolly's Estate,* 3 Wash2d 615, 101 P2d 995, with reference to unsuccessful will contests:

> "In such cases unsuccessful contestants have uniformly been denied costs for a good, sound reason, namely, because to award costs to unsuccessful contestants would be to encourage contest on weak and frivolous grounds."

Of course, different reasons come into play where the question relates to the claims for compensation of executors who may have a duty to defend a will.

We have carefully considered the argument, ably presented in the brief of counsel for the claimants, in support of the view that this litigation benefited the estate by furnishing "the administrator with an order and judicial sanction permitting it to terminate the estate" and constituted a public service, in that the decision that no reciprocal rights of inheritance existed between the United States and the Soviet Union, "freed numerous estates" in a like situation with the Lappy estate, and will be a guide to draftsmen of wills

for clients having potential heirs or beneficiaries residing in the Soviet Union, and, even, that it may induce a revision by the rulers of Soviet Russia of that country's laws of inheritance so as to accord to Americans equal rights of inheritance with Russians.

As to the first of these contentions, it should be sufficient to say that the court could have entered a valid decree of escheat had the claimants never appeared in the case. The state was evidently prepared to show, and manifestly it did show, the absence of reciprocal rights of inheritance as between this country and the Soviet Union, and, of course, there is no suggestion that counsel for the claimants aided the state in establishing that fact. They were employed and did their utmost to establish the contrary. It was an entirely legitimate employment and one to which the attorneys brought industry and learning. But their services, though valuable, were rendered to their clients, not to the administrator or the estate. In truth, this prolonged litigation, now in its eighth year, will have caused a substantial loss to the state of Oregon, which is the sole beneficiary of this escheated estate. In *In re Ohlsen's Estate,* 158 Or 197, 201, 75 P2d 6, we had occasion to say:

> "The policy of the law seems to be that administration of escheated estates should be conducted expeditiously in order to decrease the expenses and avoid lessening the amount of the proceedings to be paid to the school fund."

This estate would have been long since closed and the expenses of administration long since terminated, but for this litigation.

■ The other considerations that are pressed upon us in argument reveal no benefits to the estate of Peter Lappy, deceased, but merely benefits, real or fanciful,

to others. At most they are incidental benefits which afford no basis for the allowance of compensation. *Re Faling Estate,* supra, 113 Or 18. As stated in 4 Page on Wills (Lifetime ed) 611 § 1613, in discussing the allowance of attorneys' fees in suits to construe a will, ''If the services of the attorneys are rendered solely for the benefit of certain parties and not for the benefit of the estate, attorneys' fees can not be awarded out of the estate, even though the estate is incidently benefited by having adverse claims decided.''

This case has been ably presented on both sides. In the briefs there are cited a large number of cases from other jurisdictions, but we feel that we are not called upon to discuss them in this opinion, since the rules which govern the controversy are sufficiently determined by our own decisions. As we view the case, in its ultimate analysis the escheat proceeding, brought on behalf of the state and resisted by the Russian heirs, was one of those ''contests between claimants'', an individual matter ''involving antagonistic interests'' (*Upham v. Bramwell,* supra), the cost of conducting which cannot be made a charge on the fund of the estate.

It is said:

''* * * The court should exercise great caution in the allowance of counsel fees from a fund.'' 20 CJS 361, Costs § 123.

In another authority we find it stated:

''The allowance of counsel fees from a fund is capable of great abuse and should be exercised with the most zealous caution in regard to the rights of litigants, lest thereby the administration of justice is brought into reproach.'' 14 Am Jur 48, Costs § 74.

■ Article VIII § 2 of the Constitution of this state provides in part:

"The * * * clear proceeds of all property which may accrue to the state by escheat * * * shall be set apart as a seperate [sic] and irreducible fund, to be called the common school fund".

The legislature has enacted laws to carry the constitutional mandate into effect (ORS 120.010 et seq). It is difficult to believe that it was within the contemplation either of the framers of the Constitution or of the legislature that such proceeds should be diminished by the payment of expenses and attorneys' fees incurred by persons who, claiming to be heirs, resist the efforts of the state to recover escheated property, and further diminished by enhanced administrative expenses resulting from prolonged and fruitless litigation.

■ The other question in the case arises upon the state's first assignment of error, which reads, "The court erred in awarding costs and disbursements beyond those authorized by statute." It is conceded that the allowance of statutory costs and disbursements to the claimants was discretionary with the court under ORS 116.560, but the order goes beyond this by awarding an expert witness fee of $250, the sum of $195.64 for the travel and hotel expenses and costs of meals of a witness, and other items for which there is no statutory authorization. In view of our determination relative to attorneys' fees this was error.

The portion of the decree appealed from is reversed and the cause will be remanded to the Circuit Court for the retaxing of costs and disbursements to the claimants in accordance with the applicable statutes. No costs or disbursements will be allowed to either of the parties in this court.