The Libel of Horace T. KING, trading and doing business as Hanover Iron Works, in a cause of action civil and maritime in contract and in rem,

v.

THE Vessel FISH FACTORY NO. 1, her engines, tackle, apparel and furniture.

No. 372.

United States District Court
E. D. North Carolina,
Wilmington Division.

July 2, 1955.

Jett, Sykes & Howell, Norfolk, Va., Poisson, Campbell & Marshall, Wilmington, N. C., for petitioners.

Carr & Swails, Wilmington, N. C., for respondent.

GILLIAM, District Judge.

The petition of R. Arthur Jett, Roy L. Sykes and Henry E. Howell, Jr., attorneys at law, practicing in Norfolk, Virginia, as Jett, Sykes & Howell, for an allowance of a fee of $2500 for services rendered, same to be paid from the amount now in the Registry of the Court for distribution, has been considered and in connection with such petition the Court finds the facts and reaches the conclusions now set out:

The respondent corporation, Sanders Products Company, Incorporated, was a North Carolina corporation. W. S. Sanders of Norfolk, Virginia, was the President of said corporation; A. C. Stratton of Richmond, Virginia, was the Vice-President, and M. R. Sanders of Southport, North Carolina, was the Secretary-Treasurer. W. S. Sanders owned 113

shares of the capital stock issued from time to time in blocks of approximately 10 shares each. A. C. Stratton and M. R. Sanders owned 1 share each.

W. S. Sanders, President and Principal stockholder of the respondent corporation, died at Norfolk, Virginia, on March 16, 1954. At the time of his death Sanders Products Company, Incorporated, owned a tract of land near Southport, North Carolina, from whence it conducted a part of its operation, and also owned two vessels, namely, the Fishing Vessel "Big Chief" and the "Fish Factory No. 1".

The respondent corporation had been operating at a financial loss for a number of years and was insolvent at the time of the death of the said W. S. Sanders on March 16, 1954. On said date there were numerous outstanding maritime supply liens against each of the above named vessels, as well as a preferred mortgage in the sum of $44,000 in favor of Reconstruction Finance Corporation of record against both vessels.

Immediately upon the death of W. S. Sanders, the corporation ceased to operate and on May 18, 1954, a libel was filed in the United States District Court for the Eastern District of North Carolina, Wilmington Division, against the vessel "Fish Factory No. 1", her engines, tackle, apparel and furniture, in rem, same bearing Admiralty Docket No. 372, and on May 27, 1954, a libel was filed in the United States District Court for the Eastern District of Virginia, Norfolk Division, against the fishing vessel "Big Chief", her engines, tackle, apparel and furniture, etc., in rem, and Sanders Products Company, Incorporated in personam same bearing Admiralty Docket No. 7669. Thereafter, numerous intervening libels and petitions were filed in each cause.

On September 7, 1954, the fishing vessel "Big Chief" was sold by the United States Marshall for the Eastern District of Virginia, at Norfolk, Virginia, for the sum of $23,000. The maritime lien claims which had been filed against the said vessel, including the claim for the preferred mortgage held by Reconstruction Finance Corporation, were clearly in excess of the balance that would remain from the proceeds of sale of the fishing vessel "Big Chief", after the payment of the costs, which said balance for distribution amounted to approximately $20,000.

On October 15, 1954, and while the vessel "Fish Factory No. 1" was still in the custody of the United States Marshal for the Eastern District of North Carolina, and moored at or near Southport, North Carolina, a storm commonly known as "Hurricane Hazel" caused said vessel to break from her moorings and, as a result of the high winds and heavy seas attendant to said storm, the said vessel was caused to wash upon the beach some distance from where she had been moored, and after the high waters had subsided, the said vessel was left high and dry on the property of some person other than the said Sanders Products Company, Incorporated, and apparently resting upon broken and submerged piles, dolphins and other objects.

Thereafter petitioners ascertained that there was a port risk insurance policy in force covering the vessel "Fish Factory No. 1" for damages up to the sum of $75,000. Petitioners also learned that the underwriters on said policy of insurance were anxious to make a quick settlement and be relieved from further liability and in order to accomplish this purpose had offered to pay the respondent corporation and Reconstruction Finance Corporation, the two parties named in the policy, the sum of $20,000 in exchange for a full release of all liability. Reconstruction Finance Corporation was agreeable to such a settlement because this sum plus the proceeds from the sale of the fishing vessel "Big Chief" then on deposit in the Registry of the United States District Court for the Eastern District of Virginia, Norfolk Division, would be sufficient to pay Reconstruction Finance Corporation in full.

Petitioners, who represented several creditors having claims against respond-

ent corporation and its aforesaid vessels, determined that the sum of $20,000 offered by said underwriters for a release of their liability under the policy of insurance above mentioned, was not sufficient and if accepted would leave no funds for the payment of creditors, after payment of the preferred mortgage held by Reconstruction Finance Corporation. Petitioners arranged for a marine surveyor to inspect the vessel "Fish Factory No. 1" as she lay aground at Southport, North Carolina, and also arranged for contractors and dredging companies to send representatives to the site of the vessel for the purpose of furnishing estimates as to the probable expense of dredging a channel, floating the vessel and towing her to a marine railway, making the necessary repairs, and towing her back to her original moorings. The estimates submitted by said companies exceeded the sum of $75,000. Whereupon, petitioners advised the underwriters, their attorneys and brokers, that in their opinion the vessel "Fish Factory No. 1" was a constructive total loss and called upon said underwriters to pay the full sum of $75,000 due under said policy. This action on the part of petitioners resulted in a joint survey at Southport, North Carolina, attended by representatives of Reconstruction Finance Corporation, the underwriters and creditors of Sanders Products Company, Incorporated, prospective buyers of the vessel "Fish Factory No 1" and several attorneys representing various parties in interest. As a result of this survey and conference which followed, one of the prospective buyers made a firm offer to purchase the vessel "Fish Factory No. 1" for the sum of $22,000 as she then lay on the beach and the underwriters agreed to pay the further sum of $36,581.41 in full settlement of their liability under the policy of insurance above mentioned. The sale of the vessel and the settlement of the insurance claim was subsequently accomplished and the sum of $58,581.41 was deposited in the Registry of this Court to the credit of this cause.

Because of the aforesaid collections which were brought about largely as a result of petitioners' efforts, there was collected a sum sufficient to pay all maritime lien claims, leaving a balance on deposit in the Registry of the Court of $11,761.67; that all general creditors of the respondent corporation have now been paid out of said fund, leaving a balance on deposit in the Registry of the Court in the sum of $4,358.40, which said sum is now available for further distribution to the stockholders of the corporation.

▪ The amount of $2,500 set by petitioners as the value of services rendered is fair and reasonable and I am of the opinion that they should be allowed such amount from the balance left for distribution, provided that the Court has authority to approve and should approve payment in any amount.

In determining the answer to the question, it should be borne in mind that we do not have here the case where several of a class who have been benefitted by the activities of one of the class are called upon to bear pro rata counsel fees incurred by the member of the class responsible for such fees. In this instance the question is whether to saddle the full expense on the stockholders, principally the estate of W. S. Sanders, who owned 113 of the 115 shares of outstanding stock, since all liens have been paid and all accounts of general creditors.

It is conceded that petitioners were not employed by those who would be required to pay the fee of petitioner should the petition be allowed. The basis for the alleged right to receive pay from the balance of the fund in hand is set forth in the petition in this language: "That your petitioners are attorneys of record for certain of the intervening libelants and petitioners * * * and have labored diligently to protect the interests of their clients therein; that the efforts of your petitioners have inured to the benefit of all creditors interested therein, as well as to the use and benefit of the

respondent, Sanders Products Company, Inc.; that your petitioners through diligence and perseverance have managed to acquire and accumulate a fund more than sufficient to satisfy all creditors of said respondent, leaving a substantial balance for distribution to the stockholders of the respondent corporation * * *"

Admitting that there are exceptions, as will appear from cases cited, certainly the general rule is that the right of an attorney at law to collect compensation for his services depends upon the fact of his employment; in other words, the creation of relation of attorney and client by contract, express or implied, is essential to the right of the attorney to compensation. No citations to support this rule are needed.

I think it will be found that the exceptions come into play under circumstances not present here, circumstances calling for the application of a compelling equity, so as to accomplish clear and plain justice among the parties. Admittedly, what and all that petitioners did in this case was done in behalf of clients who employed them and have paid them for their services. Besides, there was no initiation of litigation, no outlay of expenses, outside the services, no risk, and actually no arduous and extended labors such as will be found to be the case in most, if not all, the cases applying the exception. The petitioners had a good idea and were able to capitalize on it; incidentally, the stockholders reaped a benefit. It would not be just to require the stockholders to pay petitioners a fee simply because of this incidental result and I have concluded that I do not have the authority to make them do so. The balance now available to the stockholders is $4,358.40, and the injustice which would result to them by allowing the petition is pin-pointed when it is considered that to do so would mean that they must pay to counsel over 50 percent of the amount which counsel claim to have saved for them, though counsel's efforts were exerted without any contract of employment with the stockholders and en-

tirely for the benefit of others who have already compensated them for such services.

Petitioners rely principally on four cases from this Circuit: Burroughs v. Toxaway Co., 4 Cir., 185 F. 435; Carbon Steel Co. v. Slayback, 4 Cir., 31 F.2d 702; Buford v. Tobacco Growers Co-op. Ass'n, 4 Cir., 42 F.2d 791; Bogorad v. Schwarz, 4 Cir., 208 F.2d 704.

While these cases do support the contention, not seriously opposed, that there are exceptions to the general rule that the creation of the relationship of attorney and client by contract, express or implied, is essential as a basis for compensation, it is quite impossible for me to agree that the admitted facts in this case justify holding that this is a case which comes within the exceptions. It is my opinion that a careful examination of the factual background in each of the cases lead to the conclusion that it does not uphold the petitioners position.

The opinion in the case of In re Gratton's Estate, 136 Or. 224, 298 P. 231, 79 A.L.R. 517, cited by counsel in opposition to the petition, contains pertinent observations with which I agree.

"Where one of several parties, all of whom are equally interested in a cause, employs an attorney to conduct the case for him, and the benefit of such services, from the nature of the case, extends to all the other interested parties, the other parties, merely by standing by and accepting the benefit of such services without objection, do not become liable for the attorneys' fees."

"No legal claim for compensation can be founded upon services incidentally benefitting a party, other than the employer, as against that party, and because of the incidental benefit * * *. In such case, there might be some moral equity underlying the claim, but this equity has never yet been brought within the jurisdiction of the Courts."

While in Wallace v. Fiske, 8 Cir., 80 F.2d 897, 107 A.L.R. 726, the claim for fees was upheld on rehearing, the Court

pointed out that such holding did not follow simply because benefit incidentally inured to the parties charged. The opinion at page 908 contains this statement: "It is important in most cases that there should be acceptance either express or implied as distinct from a benefit that is purely incidental. Tull v. Nash, 9 Cir., 141 F. 557; Davis v. Seneca Falls Mfg. Co., 2 Cir., 17 F.2d 546." In the case last cited the opinion, 17 F.2d at page 549, sets forth: "By their labors they may incidentally have benefited the other creditors, but that does not justify an allowance for their services."

The petition is denied and it is so ordered.