**R. Arthur JETT, Roy L. Sykes and Henry E. Howell, Jr., Appellants,**

**v.**

**MERCHANTS AND PLANTERS BANK, Administrator d.b.n. c.t.a. of the Estate of William S. Sanders, deceased, and Sanders Products Company, Incorporated, Appellees.**

**In the Matter of the libel of Horace T. KING, trading and doing business as Hanover Iron Works, in a cause of action civil and maritime in contract and in rem,**

**v.**

**THE FISH FACTORY NO. 1, her engines, tackle, apparel and furniture.**

**No. 7080.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 16, 1955.

Decided Dec. 22, 1955.

District Court for the Eastern District of North Carolina. In addition to this law firm (hereinafter called Proctors), the other parties, the appellees, were Sanders Products Company, Inc., (hereinafter called the Corporation) and Merchants and Planters Bank (referred to as the Bank), which was administrator of the estate of William S. Sanders, the deceased president and principal stockholder of the Corporation.

This litigation arose as part of a larger transaction, the settling of the debts and claims against the Corporation upon the death of its president on March 16, 1954. At that time, the Corporation ceased to exist, numerous libels were filed against it, and Proctors entered the picture as attorneys for several claimants or creditors. This immediate appeal arose not from the denial of fees from these clients, but from the denial of Proctors' petition to the District Court for an additional fee of $2,500 for services rendered by them in increasing the overall sum available for distribution to the Corporation's creditors and stockholders. The District Judge, sitting without a jury on June 9, 1955, denied Proctors' claim for fees.

The sole issue before us is whether the District Court erred in denying Proctors (from the fund in court) a fee for these services. We hold that it did not, and accordingly the judgment of the District Court is affirmed.

The Corporation was owned largely by its president, who held 113 of its 115 shares of capital stock. Upon his death, there were numerous outstanding supply liens against each of the firm's two vessels, the Big Chief and the Fish Factory No. 1, and a $44,000 preferred mortgage in favor of the Reconstruction Finance Corporation. Immediately libels were filed; the Big Chief was sold for $23,-000 and Fish Factory No. 1 was placed in the custody of a United States Marshal.

On October 15, 1954, the Fish Factory No. 1 broke loose from its moorings and was cast upon a beach, in a damaged condition, by a storm commonly referred

R. Arthur Jett and Roy L. Sykes, Norfolk, Va. (Jett, Sykes & Howell, Norfolk, Va., on the brief), for appellants.

James B. Swails, Wilmington, N. C. (Carr & Swails, Wilmington, N. C., on the brief), for appellee Merchants & Planters Bank.

Before SOPER and DOBIE, Circuit Judges, and R. DORSEY WATKINS, District Judge.

DOBIE, Circuit Judge.

This is an appeal by Jett, Sykes and Howell, Norfolk, Virginia, attorneys practising under this firm name, from a denial of their petition for a fee from a fund in the Registry of the United States

158

to as "Hurricane Hazel." This vessel was covered against loss up to $75,000 by a port risk insurance policy. A prompt settlement offer of $20,000 was made by the underwriters. Proctors, then representing several creditors of the Corporation, realized this sum would not satisfy their claims and when added to the sale price of the other vessel, would pay off at most only court costs and the preferred mortgage.

It was at this time that the services upon which Proctors base their claim in the instant suit began. They obtained estimates from marine contractors, surveyors and dredging companies, and together with counsel for the R. F. C. and others, had a joint survey made. Proctors did not secure court sanction or the consent of any of the other creditors for these proceedings. The net result was that the underwriters settled for $36,581.41 (on the theory that the vessel might be a constructive total loss as Proctors contended) and a purchaser for $22,000 was found for the wrecked vessel. This sum was placed in the Court Registry and pursuant to an order of distribution entered on April 30, 1955, was paid out in the following order: court costs, preferred mortgage, maritime lien claims and in personam claims. A total of $11,761.67 remained in the Registry of the Court after this distribution.

Other claims were presented to the Court, including one by the Bank for $178,179.15, representing the unsecured claim of the deceased stockholder and two claims by Proctors for their clients, Wallace Fisheries Company and A. C. Stratton. Proctors' claim for a $2,500 fee was presented by way of petition on June 6, 1955. A hearing was held thereafter, Proctors' and the Bank's claims were deferred, while other claims were ordered paid, including those of Proctors' two clients, leaving only $4,358.40 in the Court Registry. No objection to the payment of these other claims, which greatly reduced the fund, seems to have been made by Proctors. Yet Proctors now demand over one-half of the remainder of the fund then in the Registry of the District Court.

Proctors at all times contended the stockholders, made up chiefly of the Bank as administrator of the Sanders' estate, were liable for the requested fee. Although the District Judge found the fee sought to be fair and reasonable, he declined to authorize its payment from the small sum remaining in the Registry, and ordered the remaining $4,358.04 distributed to the stockholders.

Proctors' theory was that their efforts made available an increase of $18,581.41 in the fund, which was $14,641.26 in excess of the amount that would have been required to pay in full the claims of their clients, thus they (the Proctors) were entitled to compensation for their services. They relied upon such a custom in the English Courts, four decisions from our Circuit, Burroughs v. Toxaway Co., 4 Cir., 185 F. 435; Carbon Steel Co. v. Slayback, 4 Cir., 31 F.2d 702; Buford v. Tobacco Growers' Co-op. Ass'n, 4 Cir., 42 F.2d 791, and Bogorad v. Schwarz, 4 Cir., 208 F.2d 704, in addition to decisions from other federal courts.

Proctors throughout their endeavor to save money or create a larger fund were employed by creditors of the Corporation. There is no evidence to the contrary and we must assume that they were properly compensated by their clients for the services. At no time did Proctors secure permission from the Court or from the other creditors to undertake to effect these additional savings for the group. Counsel for the Reconstruction Finance Corporation assisted Proctors in their undertaking; no claim was made to the Court for that assistance.

Proctors throughout requested the stockholders to bear the burden of their fee. Here, that would be the Bank as administrator of Sanders' estate. The saving to this so-called client was $4,358.40; of that amount, Proctors ask for a $2,500 fee. With these facts in mind, we are unable to say that the District Court erred in denying Proctors' petition. This was a matter within the sound judicial discretion of the trial court.

It was conceded that Proctors were not employed by those who would be required to pay the fee had the District Court allowed the petition. As noted by the District Judge, "Admitting that there are exceptions, as will appear from cases cited, certainly the general rule is that the right of an attorney at law to collect compensation for his services depends upon the fact of his employment; in other words, the creation of relation of attorney and client by contract, express or implied, is essential to the right of the attorney to compensation."

This was not a case where several of a class, who have been benefitted by the activities of one or more of the class are called upon to bear the pro rata counsel fees incurred by the member or members of the class who employed the attorneys. Such a case would arise when lawyers were employed by a few out of a class of bondholders holding similar bonds of a bankrupt corporation. Then, any money recovered by these lawyers would accrue ratably to all members of the class holding similar bonds. See Burroughs v. Toxaway Co., supra, and Buford v. Tobacco Growers' Ass'n, supra, relied upon by Proctors. We feel that the other cases cited to us by Proctors likewise fail to meet this factual situation, although we are mindful of certain exceptions to the general rule that there are circumstances calling for the application of a compelling equity, so as to accomplish clear and plain justice among the parties.

This was, instead, a case where Proctors had a good idea and were able to capitalize upon it, and incidentally, the stockholders reaped a benefit. Proctors were employed by, and acted for, the clients who employed them. The activities of Proctors were directed towards securing the payment of the claims of their own clients. Under such circumstances, where benefits incidentally accrue to others as a result of the proper discharge of counsels' duty to their own client, such services may well be noncompensable. See Davis v. Seneca Falls Mfg. Co., 2 Cir., 17 F.2d 546; Tull v. Nash, 9 Cir., 141 F. 557, 563; and In re Gratton's Estate, 136 Or. 224, 298 P. 231, 79 A.L.R. 517.

Since we think there was no abuse of discretion on the part of the District Court in denying Proctors' petition for a fee, the decree of the District Court is affirmed.

Affirmed.