Argued January 29, reversed and remanded March 19,
petition for rehearing denied April 23, 1958

IN THE MATTER OF THE ESTATE OF PETER LAPPY,
DECEASED

## STATE LAND BOARD *v.* THE UNITED STATES NATIONAL BANK

## STATE LAND BOARD *v.* DOYLE

322 P. 2d 908

*Wilber Henderson,* Portland, argued the cause for respondents. With him on the brief was Edward F. Doyle, Portland.

*Catherine Zorn,* Assistant Attorney General, Salem, argued the cause for appellant. With her on the briefs was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and KESTER\*, Justices.

ROSSMAN, J.

This estate is before us again, this time upon appeals taken by the State of Oregon through its State Land Board, which challenge the validity of two orders made July 7, 1955, by the Circuit Court for Multnomah County (Probate Department), one of which determined the amount of compensation payable to the administrator of the estate, United States National Bank of Portland, and the other of which determined the amount payable to the administrator's attorney, Mr. E. F. Doyle, since deceased. The estate is that of Peter Lappy, who died intestate January 27, 1946. When the estate was previously before us (In the

---

\* Resigned March 1, 1958.

Matter of the Estate of Peter Lappy, Deceased, *State Land Board v. Sovenko,* 202 Or 571, 277 P2d 781), this court recognized that since the deceased left no heirs who were qualified to take, the assets of the estate escheated to the State, appellant herein. The administrator and the attorney are the respondents.

The issues presented by this appeal are: (1) did the respondents perform for the estate any "extraordinary and unusual services" as that term is employed in ORS 117.680; and (2) if they did, is the sum of $1,000, which the first of the two above-mentioned orders awarded to the administrator, and $2,000, which the other awarded to the attorney, reasonable compensation for such services.

Following Mr. Lappy's death, and pursuant to a petition presented to the Circuit Court for Multnomah County (Probate Department), the respondent, United States National Bank, was appointed on February 8, 1946, administrator, and Mr. Doyle was made attorney. The estate was a simple one. The deceased owed no debts, and no claims against the estate were filed. Lappy had been a workingman and, hence, his death presented the administrator with no problem of the kind that arises when a deceased owned or had a financial interest in a business enterprise. Lappy possessed nothing but cash items and a postal savings account. The cash was deposited by the administrator in interest-earning savings accounts. Since the postal savings account was entered in the joint names of Lappy and another and was payable to the survivor, the administrator acknowledged that the survivor was owner of the account. After that had been done, the value of the remaining assets was fixed by the appraisers as $18,395.18. The assets did not earn sufficient income to subject the estate to the payment of income taxes.

August 21, 1946, the administrator filed its final account which reported that search had failed to indicate that the deceased had any heirs in the United States, but that it possessed information that the deceased had heirs in the Union of Soviet Socialist Republics. The paper continued:

"* * * notice has been served on the Administrator by the State Land Board of the State of Oregon that under the provisions of Section 61-107, OCLA, the said heirs in Russia would be unable to inherit and that the State Land Board of the State of Oregon claims an escheat in this estate.

* * * * *

"The entire amount accounted for in the estate is $18,405.81, that under date of August 13, 1946, this Court approved an estimated Administrator's fee of $488.46 and estimated Attorney's fee for E. F. Doyle, who has acted as attorney for the Administrator, in the sum of $488.46, the said fees being fixed on an estimated basis for tax purposes only."

September 10, 1946, the State, through its Land Board, filed a petition for the escheat of the estate. September 23, 1946, two individuals, who resided in Soviet Russia, appeared through an attorney and filed an answer to the escheat petition, which, after describing the one as the sister and the other as the brother of the deceased, sought distribution of the estate to them. October 9, 1946, a decree was entered which approved the administrator's final account including the sum of $488.46 as compensation for the administrator and a like sum for the attorney. The decree ordered that payment be made at that time of the sum of $488.46 to Mr. Doyle "as a partial payment and advance on account of his services as attorney," but as to the remainder of the estate it ordered that, in view of the pending escheat petition and the objec-

tions thereto, distribution be withheld until further order.

■ In the meantime, the litigation between the State and the two Russian claimants progressed; it centered in the question of reciprocal rights of inheritance between nationals of the United States and of Russia. The administrator was neutral in the controversy. Its role, and it properly assumed it, was that of a stakeholder. *Larabee v. Mell, Extr'x,* 193 Or 543, 239 P2d 597; *Manser's Estate,* 60 Or 240, 118 P 1024; Bancroft's Probate Practice, 2d Ed, § 436. The issue terminated with this court's holding, *In re Lappy Estate,* supra. Our mandate issued December 28, 1954, and was entered in the circuit court January 13, 1955. May 24, 1955, the administrator and the attorney presented their aforementioned petitions for additional compensation which precipitated the issues now before us.

From the above it will be observed that (1) from the day the bank was appointed administrator (February 8, 1946) to that upon which the final account was approved (October 9, 1946), eight months and one day passed; (2) from the time of the administrator's appointment to the day when the mandate was entered (January 13, 1955), which gave effect to our decision (202 Or 571, 277 P2d 781), virtually nine years passed. The long delay was due to no fault of the administrator or its attorney, but because of procrastination of the parties in the escheat proceeding.

May 23, 1955, the administrator filed in the circuit court a petition for additional compensation for itself. It stated, in part:

> "Since the said date of August 13th, 1946, this estate has been in litigation, and your Petitioner has been obliged to perform extra-ordinary [sic] services during a nine and one-half year period,

and will have to perform additional extra-ordinary [sic] services before the estate is closed;

"\* \* \* during the said period your Petitioner has filed thirteen Supplemental Final Accountings, and that it is entitled to an additional Administrator's fee of not less than $1000."

Concurrently with that petition, Mr. Doyle, the administrator's attorney, filed a similar petition in his own behalf which said:

"\* \* \* your Petition has performed extraordinary legal services during the past nine and one-half years, said services being more particularly set forth in Exhibit 'A', attached hereto and made a part hereof, and that he is entitled to an allowance of substantial additional attorney's fees."

The petition of the administrator, as will be observed from the above-quoted excerpt, stated: "This estate has been in litigation." The litigation was, as we have indicated, between the State Land Board, which claimed the estate under the laws governing escheat, and the Russian claimants. There was no other litigation or controversy.

Although the petition of the administrator averred that "extra-ordinary services" had been performed and sought additional compensation therefor, it made no intimation of what they consisted, unless the words "thirteen Supplemental Final Accountings" identified them. Mr. Doyle's petition, as we have seen, declared that he had performed "extraordinary legal services" but specified nothing beyond saying that they were "more particularly set forth in Exhibit 'A'." The latter, which is lengthy, is a report in narrative style of the services which Mr. Doyle performed for the estate. It began with the day when Mr. Doyle first became acquainted with the estate, following the death of

Lappy, and ended with the time when he applied for the additional compensation. It did not identify as unusual or extraordinary any part of the services which he had rendered.

The State Land Board met each of the two applications for additional compensation with answers which it filed June 13, 1955. Each answer averred that no unusual or extraordinary services had been performed in the estate matter. In addition, the answer to Mr. Doyle's petition alleged:

> "Said petition for allowance of additional attorney's fees and exhibit 'A' attached thereto more particularly setting forth said services do not allege or set forth with particularity the specific extraordinary legal services performed for which additional attorney's fees have been requested, and it is not possible to distinguish which items are relied upon as extraordinary services and those which are usual and ordinary."

After the answer containing that averment had been served upon Mr. Doyle, he did not amend or in any other way amplify his position so as to designate the parts of his services which he deemed the subject for supplementary compensation. June 15, 1955, the probate department conducted a hearing, in the course of which both the attorney and the administrator presented evidence which described the services which had been rendered and indicated their value. The State presented opposing evidence.

The challenged order of the circuit court, which granted to the administrator the additional sum of $1,000, ruled:

> "That $1,000.00 is a reasonable sum for the extraordinary services rendered by the Administrator of this estate and in addition to the sum of $488.46 heretofore provisionally allowed."

Thus, the administrator was allowed total compensation of $1,488.46. The order did not specify the services which the court deemed extraordinary, nor did any other entry by the court do so. The order of the circuit court, which granted to Mr. Doyle the additional sum of $2,000, stated:

"That $2,000.00 is a reasonable sum to be allowed E. F. Doyle for extraordinary services rendered to this estate, and in addition to $488.46 heretofore provisionally allowed, or a total attorney's fee of $2,488.46, of which said sum $488.46 heretofore has been paid."

Neither that order nor any other gave any indication of the parts of the services rendered by Mr. Doyle which the court regarded as extraordinary.

Section 19-1011, OCLA, which was in effect August 13, 1946, when the circuit court determined that $488.46 was the proper amount to be paid to the administrator, and that a like amount was just for the attorney, read:

"The compensation provided by law for an executor or administrator is a commission upon the whole estate accounted for by him, as follows:

(1) For the first $1,000, or any less sum, at the rate of seven per centum thereof;

(2) For all above that sum and not exceeding $2,000, at the rate of five per centum thereof;

(3) For all above $2,000 and not exceeding $4,000, at the rate of four per centum thereof;

(4) For all above the last mentioned sum at the rate of two per centum thereof.

"In all cases, such further compensation as is just and reasonable may be allowed by the court or judge thereof, for any extraordinary and unusual services not ordinarily required of an executor or administrator in the discharge of his trust."

Oregon Laws 1951, ch 493 (ORS 117.680), which was in effect when the two orders of July 7, 1955, pertaining to "extraordinary and unusual services" were signed, changed the percentages of § 19-1011, OCLA, but retained the final paragraph of that section which governs the award of compensation for extraordinary and unusual services.

Rule 10(a) of the Circiut Court for Multnomah County (Probate Department), in prescribing the manner in which applications may be made for additional attorneys' fees, says:

"Application for extraordinary fees shall be presented separately by a verified petition detailing the extraordinary services performed."

The demands of that rule were not met, unless the paper aforementioned, known as Exhibit A, satisfied the rule.

The schedule of fees promulgated by the Oregon State Bar contemplates that when the appraised value of an estate exceeds $2,400, the fee of the attorney shall equal the amount of the statutory compensation of the executor or administrator.

It will be observed that the two challenged orders awarded to the administrator $488.46 as compensation for its services which it rendered to the estate during the period of administration, and a like sum to the attorney for his ordinary services to the administrator. No one questions those awards. The issues submitted by this appeal, as we have indicated, are: (1) did the administrator and its attorney render, during the period of administration, any services which the above provisions of our laws deem "extraordinary and unusual;" (2) if it is determined that the administrator and its attorney, in the period of administration,

rendered "extraordinary and unusual services," are the sums of $1,000 for the administrator and $2,000 for the attorney "just and reasonable" allowances therefor.

In support of its contention that the respondents performed services of an extraordinary nature, their joint brief dwells upon the fact that from the day when the administrator was appointed to the time when the court entered the orders under attack nine years and five months passed. It calls attention to the additional fact that the estate's representatives were not responsible for the delay. Then, with special reference to the administrator, the brief says:

"This prolonged tenure of office of itself establishes that the services performed by the administrator were not those usually and ordinarily performed by an administrator. As the usual thing, an estate may be closed within one year, and if the law is followed, estates are closed within such time. The statute (§ 117.310 ORS) provided that *as soon* as charges and claims have been satisfied, payment of legacies and distribution of the estate shall be made forthwith to the persons entitled thereto. So, if an administrator acts diligently, any ordinary or usual estate will be closed within a year.

\* \* \* \* \*

"Let us now consider the record in respect to what was done by the administrator that would fall outside of the usual and ordinary duties of an administrator, or in the category of extraordinary and unusual services such as are not required ordinarily of an executor or administrator in the discharge of his trust.

"1st: Semi-annual reports were filed for two years, and then one each year thereafter, or thirteen reports were filed following the filing of the Final Account.

"2nd: The Trust Committee of the administrator bank was required to review the record once or twice each year for nine years.

"3rd: The administrator was required to carry on an extensive correspondence, and engage in lenghty telephone calls with various contending parties during the nine and one-half years.

"4th: The administrator was required to make fiduciary income reports to both the State of Oregon and the Federal Government for each year during the period.

"5th: The administrator was required to prepare and make available for the bank examiners each year a report for its examination.

"All the foregoing required the time of various clerks and officers of the administrator bank. None of the foregoing would fall within the scope of the duties of an administrator in the probation of an ordinary or usual estate completed within the time contemplated therefor."

The following is the part of the brief submitted on behalf of Mr. Doyle which mentions the more important duties he performed for the estate and its administrator:

"* * * He spent some time in trying to locate the body of Peter Lappy, the decedent, who had drowned after falling off a barge operated by the Port of Portland; he conferred with the State Inheritance Tax Commission in regard to various items and procured from the San Francisco Bank money on deposit there and belonging to the decedent. The Final Account was filed in August, 1946 and an Order taken for the fixing of time for hearing objections to the Final Account.

"Before this time arrived, Peter Schwabe, Esq. of the Portland Bar conferred with Mr. Doyle in regard to filing objections on behalf of the Russian Consulate General. This information was conveyed to the State Land Board. Mr. Doyle then communicated with the Secretary of State at Washington, D. C., in regard to a Treaty pertaining to the property belonging to alien heirs.

"An Order was taken approving the Final Account, which included inter alia, the provision for payment of $488.46 as partial payment and as an advance on account of attorney's fees. This was without prejudice as to any claim he might make for further fees. Up to the time the Order on the Final Account was taken, Mr. Doyle had devoted fifty-one actual hours to work in connection with the estate. Mr. Doyle forwarded to the State Land Board a copy of the Order Approving Final Account and directing payment to him of a sum on account of attorney's fees.

"Thereafter, Mr. Doyle gave such attention as was necessary to the escheat proceeding. He attended the taking of depositions and was present at the final trial. This aggregated in all four and one-half days. He devoted some time in connection with the appeal by the alien heirs. He put in an aggregate of approximately one hundred fifty hours, which does not include the time spent in Court. Taking everything into consideration, it would amount to two hundred one hours exclusive of the time in Court."

Although the petitions of the two respondents failed to designate as extraordinary any part of their services, the evidence they presented seems to make clear what they had in mind. One of their witnesses testified: "I would consider everything that Mr. Doyle did beyond the normal usual period would be special or extraordinary." In expressing an opinion as to the value of Mr. Doyle's services, the witness employed the premise which he stated in the words just quoted. It is manifest from the testimony given by Mr. Doyle that the petitions were submitted to the probate court upon the proposition that all services which the estate's representatives performed after the entry of the decree of October 9, 1946, should be deemed unusual and extraordinary within the purview of Oregon Laws 1951,

ch 493 (ORS 117.680) supra. Before resorting by quotation from Mr. Doyle's testimony as support for the statement just made, we explain that Exhibit A, mentioned in the testimony, is a lengthy narrative which he attached to his petition for supplemental compensation and which outlined the services he had performed. We now take the following from the testimony which he gave in support of the petitions:

"* * * I want to say right here and tell the Court, if he hadn't had a chance to reac that [Exhibit A]—and that was up to about the week of October 9th, 1946, as near as I can figure from my records, and I put in about 51 actual hours of law work in this estate, and anything from that time on would be extraordinary work."

Later, Mr. Doyle's attention was directed to the enumeration of his services which he attached to his petition for supplementary compensation and which is there denominated Exhibit A. Then he was asked:

"After 1946, on the statement you have here, this Exhibit, how would you class those services as to which were extraordinary and which were unusual?"

Referring to October 9, 1946, he replied:

"They were extraordinary after that time."

Still later the following occurred:

"Q Now, you take the position, Mr. Doyle, before the recess, that any services rendered after October 9th, 1946, were extraordinary services?

"A No. Here is my understanding of it, if you ask me: it is my understanding that the ordinary services would be the services performed in an ordinary estate which was closed within a reasonable time; it would be within one year in a case of this kind, or perhaps ten months—it could be closed quicker; and it is my opinion that any services per-

formed after one year would certainly be extraordinary.

"Q Can you point out any authority which indicates that an estate must be closed within a certain period of time, or that any services rendered after that period of time would be considered extraordinary?

"A No; but I think it is customary that estate be closed just as soon as possible.

\* \* \* \* \*

"A I set forth in my affidavit and I now consider that all services performed after the final account was filed, and some before the filing of the final account, are extraordinary services and unusual."

The foregoing will suffice as a statement of the facts and the issues.

We take the following from Bancroft's Probate Practice, 2d Ed., § 420:

"To entitle a representative to any allowance of compensation exceeding the usual commissions, it must appear that such representative rendered some 'extraordinary service.' For services rendered in ordinary administration, the representative is entitled only to the statutory commissions. \* \* \* Such compensation is deemed adequate for all services, from the institution of probate proceedings down to final settlement and distribution of the estate, except for extraordinary services. There is no presumption, moreover, that an allowance in excess of the regular commissions includes an allowance for extraordinary service.

"As to what constitutes extraordinary services, it has been held that the mere fact that services are rendered after settlement of final account and before distribution does not characterize them as 'extraordinary.' While there is no rule of strict application, the word 'extraordinary' as applied to 'services' in this connection is said to mean 'beyond or

out of the common order or rule; not usual, regular, or of a customary kind; not ordinary; remarkable; uncommon; rare.' "

The issue in *In re Phelps' Estate,* 186 Cal 292, 199 P 10, concerning purported extraordinary services was similar to that now before us. In that case, the final account and petition for distribution was filed June 12, 1919. An order for distribution was thereupon made from which an appeal was taken. Upon appeal, the order was reversed and the probate court was directed to make a different distribution. July 22, 1920, a second supplemental account was filed which showed the receipts and expenses of the executors during the interval the case was on appeal. The new petition for distribution received a hearing August 5, 1920. A third supplemental account was filed which covered the interval between the filing of the second petition for distribution and the time of hearing. Upon the final hearing, the executor asked for an additional allowance for services subsequent to the filing of the final account in June, 1919. The total value of the estate was $539,388.82 upon which the executors were allowed the regular statutory commission as fixed by the California Code amounting to $4,071.94. In his petition for an allowance of additional compensation, the executor did not file a claim showing any extraordinary services, but claimed compensation

"on the theory that the estate was closed at the time he filed the final account in June, 1919, and that for his services as executor subsequent thereto he is entitled to compensation in addition to that fixed by the Code."

The decision stated that the services rendered after June, 1919,

"consisted of the performance of the ordinary duties of an executor, such as the leasing of the prop-

erty, collection of rents due on the property and of interest due on claims owing to the estate, and the paying out of such moneys as were necessary for the completion of the administration."

It will be noticed that, as compared with the services rendered by the administrator in the case at bar (after October 9, 1946), the services in the California case were substantial. Those in the case at bar consisted of nothing but the receipt of interest upon savings accounts. In rejecting the executor's petition, the court declared:

"* * * It is plain from these provisions that, aside from any extra allowance that may be proper for extraordinary services, the commission fixed by the section is intended to be full compensation to the executors for all services rendered by them during the entire administration of the estate from the beginning thereof down to the time of the final settlement of the estate and the distribution thereof to the persons entitled thereto. The administration did not close at the time of the rendition and settlement of the account of 1919. The appeal then taken extended the administration, and when that order was reversed the full administration could not be complete until the final order of distribution was made, and all accounts of the executors adjusted and settled. The fees already received by the executors according to the statutory schedule were therefore full compensation for all the services which had been rendered from the beginning of the administration until the final settlement of the third supplemental account in August, 1920. The court below properly refused to allow further commissions."

2. Counsel for the respondents have cited no authority which took a view opposite to that expressed in the excerpt which we quoted from Bancroft's treatise, nor from the holding *In re Phelps' Estate*. Our search

has revealed no support for the respondents' claim that the normal statutory compensation extends only to the time when the final account receives approval. We concur in the holding of *In re Phelps' Estate.*

In this case, the administration of the estate extended over an extraordinary period of time. It is plain that neither of the respondents was responsible for the protracted period.

■ We have given careful attention to the evidence which discloses the services performed by the respondents during the period of administration. We found in it nothing which can be deemed unusual or extraordinary except the fact that the administrator, with the assistance of its attorney, was required to prepare and file more semi-annual reports than is generally required. The probate department apparently believed that the service just mentioned was so long continued that it should be deemed the subject matter of extra compensation. It is clear that the period of delay was much longer than in the California case from which we quoted. We believe that satisfactory reason supports the view of the probate department, and that some extra compensation can properly be deemed in order for the unusually large number of semi-annual reports that were filed. However, the preparation of the semi-annual reports was a simple matter. Each succeeding one was similar to its predecessor, with the exception of the notation of the current receipt of interest. The probate department, however, deemed that all services performed after October 9, 1946, demanded extra compensation. In that view of the law the probate department erred.

■ The amount of award for extraordinary service in the probate of estates is peculiarly a subject matter for the exercise of discretion by the probate judge. *In*

*re Feehely's Estate,* 182 Or 246, 187 P2d 156. His exercise of discretion is aided by his extensive experience in the administration of estates.

The cause is remanded with instructions to award compensation to the respondents in accord with the foregoing; that is, to each a reasonable amount for the work involved in the preparation and filing of those semi-annual reports which exceeded in number the usual quantity.

Reversed and remanded.

Mr. Justice KESTER took no part in the decision of this case.