Argued and submitted March 22, reversed and
remanded September 15, reconsideration denied October 27,
petition for review denied November 23, 1982 (294 Or 149)

JONES et al,
*Appellants,*

*v.*

KUHN et al,
*Respondents.*

(No. 37163, CA A20146)

650 P2d 999

Kris Jon Gorsuch, Salem, argued the cause for
appellants. With him on the briefs were Daniel A. Ritter,
and Harland, Ritter, Saalfeld & Griggs, Salem.

Robert M. Johnstone, McMinnville, argued the cause for respondent Donald D. Kuhn. With him on the joint consolidated brief was Cushing, Johnstone & Peterson, McMinnville.

J. Ray Rhoten, Salem, argued the cause for respondent Mary E. Kuhn. With him on the joint consolidated brief was Rhoten, Rhoten & Speerstra, Salem.

D. Wesley Hamilton, Salem, argued the cause and filed a joint consolidated brief for respondent Donald H. Kuhn.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiffs brought an action under ORS 28.040 for declaratory relief to determine whether an option to purchase the family farm executed by their now deceased mother in favor of her conservator's son was lawful. The trial court entered an order dismissing their suit, and they appeal.

Defendants Donald D. Kuhn (Senior) and Mary E. Kuhn are the parents of defendant Donald H. Kuhn (Junior). Mary is the sister of plaintiffs. In the spring of 1973, Henry and Bertha Deyoe, parents of plaintiffs and Mary, entered a nursing home after having lived on their 35-acre farm for nearly 60 years. Junior then moved onto the farm, rent free, acting first as caretaker and then taking over the actual farming operations. He offered to buy the farm from his grandparents, but they refused, because they hoped someday to return to it.

In November, 1974, Senior petitioned the court to be and was appointed conservator for both the Deyoes. Mr. Deyoe died in December, 1974. Junior again offered to buy the farm from his grandmother for the assessed tax value, but she refused because she felt that was too much money. However, sometime later, she and Junior settled on a $15,000 purchase price.[1] For tax purposes, Senior and the conservator's attorney decided that an option granting Junior the right to purchase the farm within 90 days after Mrs. Deyoe's death was the best way to handle the matter.

In March, 1975, the attorney sent plaintiffs a letter informing them of the option and asking for their views. Both plaintiffs expressed an objection to the option price and requested a delay of further action until plaintiff Jones returned from Arizona in June. Neither was opposed to Junior's purchasing the farm. The attorney wrote to plaintiffs and told them that he was recommending to Senior that he delay further action until Jones returned. Senior, who received a copy of this letter, told the attorney to proceed with the option. The attorney visited Mrs. Deyoe and drafted the option. He pointed out to her the disparity

---

[1] On the inheritance tax return the farm was valued at $18,000. When Mrs. Deyoe asked Senior the "appraised" value of the farm, he told her it was $15,000.

between the market value of the farm and what Junior would pay.[2] Mrs. Deyoe was not concerned about the difference, because she wanted Junior to have the farm.

The attorney then employed another attorney to evaluate Mrs. Deyoe's competency and to have her execute the option if he found that she understood what she was doing. That attorney found that she was competent and that it was her intention to execute the option. Mrs. Deyoe executed the option on April 18, 1975, and the second attorney acknowledged her signature.

On May 2, 1975, the conservator's attorney informed plaintiffs of the execution of the option, but he did not notify them of their right to object. The option was not listed on the annual accounting of the conservatorship, nor was it presented to the court for approval. *See* ORS 1 26.297.

Junior continued to reside on the property rent free and made some improvements on it. The estate paid all the expenses of the improvements, except for some nails, but Junior provided his labor at no charge to the estate.

Mrs. Deyoe died intestate on August 1, 1979. On August 7, 1979, Senior filed a final accounting and petitioned to close the conservatorship. On August 9, 1979, the order approving the final account and closing the conservatorship was signed by a judge, the same person who had earlier been the attorney for the conservatorship. No mention of the option was in the documents sent to plaintiffs. On October 25, 1979, plaintiffs' attorney contacted the attorney for the personal representative and was informed that the option had been exercised that day and that Senior had delivered the deed to Junior. Plaintiffs filed their complaint on October 30, 1979.

■   Plaintiffs argue that the court erred in failing to hold that the option was void when it was executed. We agree. ORS 126.223 provides:

"(1)  A protected person, if mentally competent, may make wills, change beneficiaries of life insurance and

---

[2] The attorney characterized the disparity at the trial as the difference between the "appraised value and what would be the purchase price" to Junior.

annuity policies and exercise any power of appointment or any elective right to share in the estate of a deceased spouse.

"(2) Except as provided in this section and ORS 126.293, *a protected person for whom a conservator has been appointed cannot convey or encumber his estate or make any contract or election affecting his estate."* (Emphasis added.)

Although a conservator has the power to grant an option for purchase of the protected person's property, ORS 126.313(12), the protected party does not.

Citing ORS 126.313(7) and 126.347, defendants argue that Senior, as conservator, had the authority to ratify and confirm Mrs. Deyoe's "estate plan" for the distribution of her property. ORS 126.313(7) provides that a conservator has the power to:

"acquire or dispose of an estate asset including land wherever situated for cash or on credit, at public or private sale; and to manage, develop, improve, exchange, partition, change the character of, or abandon an estate asset in connection with the exercise of any power vested in the conservator."

ORS 126.347 provides:

"In investing the estate, selecting assets of the estate for distribution under ORS 126.317 to 126.327, and utilizing powers of revocation or withdrawal available for the support of the protected person and exercisable by the conservator or the court, the conservator and the court shall take into account any known estate plan of the protected person, including his will, any revocable trust of which he is settlor, and any contract, transfer or joint arrangement with provisions for payment or transfer of benefits or interests at his death to another or others which he may have originated. The conservator may examine the will of the protected person."

Neither statute gives any power to a protected person. Because, in this case, it was the protected person, *and not the conservator,* who granted the option, neither statute is applicable. Furthermore, although the conservator may have the power to ratify a conveyance made by a protected person, there is no evidence in the record that any ratification took place while Mrs. Deyoe was alive.

Defendants also argue that Mrs. Deyoe was authorized to grant the option by virtue of ORS 126.223(1), *supra.* They argue that the section is

"* * * obviously intended to allow a protected person to make a will and Mrs. Deyoe's actions, in executing the option, were consistent with her stated and known intent and desire of giving her grandson * * * the right to purchase the property at the price stated of $15,000 after her death."

Although no one disputes the fact that Mrs. Deyoe wanted her grandson to have the farm, ORS 126.223(1) provides only that a protected person may

"* * * make wills, change beneficiaries of life insurance and annuity policies and exercise any power of appointment or any elective right to share in the estate of a deceased spouse."

No one contends that the option was a will,[3] and no one can reasonably claim that the option comes within any other terms of the statute.

Because we hold that the option was void, we need not address plaintiffs' other argument that the option transaction was tainted with a substantial conflict of interest and thus voidable under ORS 126.297, nor need we address defendants' arguments that plaintiffs are guilty of laches and are estopped to bring this action.

██ ██ Plaintiffs request attorney fees. Although the general rule is that attorney fees cannot be awarded unless provided by statute or contract, they may be awarded to a party who, at his own expense and not for his sole benefit, successfully brings suit to benefit an estate or trust as a whole. *State Land Board v. Sovenko, et al,* 202 Or 571, 574-76, 277 P2d 781 (1954). In order for the prevailing party to recover attorney fees, the suit must have resulted in an increase in the estate or trust assets. *McCormick v. Rand,* 246 Or 606, 425 P2d 488 (1967). It is clear that the estate of Mrs. Deyoe is enlarged by our holding in this case. It is also clear that not only plaintiffs, but all the heirs of Mrs. Deyoe will benefit from this action.

---

[3] The option does not meet the formal requirements for a properly executed will. *See* ORS 112.235.

Reversed and remanded for entry of an order setting aside the conveyance to Donald H. Kuhn, for such other relief as may be appropriate and for determination of an attorney fee.[4]

---

[4] Attorney fees are to be paid by the estate. *See Kinney v. Uglow,* 163 Or 539, 584, 98 P2d 1006 (1940).