Argued and submitted September 28, 2010, reversed and remanded
February 15, 2012

In the Matter of the Guardianship of
Erna Derkatsch, a Protected Person.

Erick DERKATSCH
and Natalie St. John,
Trustees of the Erna Derkatsch Trust,
*Appellants,*

*v.*

THORP, PURDY, JEWETT,
URNESS & WILKINSON, P. C.,
*Respondent.*

Lane County Circuit Court
510721635; A139572

273 P3d 204

Danna C. Fogarty argued the cause for appellants. With her on the opening brief was Gregory E. Skillman.

Brian J. Millington argued the cause for respondent. With him on the brief was Thorp, Purdy, Jewett, Urness & Wilkinson, P.C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

Erick Derkatsch and Natalie St. John, as trustees of the Erna Derkatsch Trust,[1] appeal a supplemental judgment awarding attorney fees from the funds of the trust to be paid to the law firm of Thorp, Purdy, Jewett, Urness & Wilkinson, P.C. (the firm). The fees at issue were awarded in a protective proceeding relating to Erna, but were, in large part, for work done by the firm relating to a financial abuse case filed well before the protective proceeding was initiated. The trustees contend on appeal that the trial court erred in awarding fees pursuant to ORS 125.095. Because we conclude that ORS 125.095(1) does not authorize compensation for services that the firm provided before Erna became a protected person, we reverse and remand.[2]

We state the background facts of this case as we find them on *de novo* review. ORS 19.415 (2007).[3] In 1999, Erna executed a trust. She was both the trustee and principal beneficiary, and could distribute any amount of income and principal to herself. Section 7.1 of the trust provided that, if Erna became incapacitated, two of her children, Erick and Natalie, would become cosuccessor trustees. Under those circumstances, the trustees were to distribute to Erna, or for her benefit, as much of the income and principal of the trust as

---

[1] For ease of reference, when describing the background facts of this case, we refer to Erna Derkatsch and her children by their first names. However, in their capacity as trustees, we refer to Erick and Natalie collectively as "the trustees."

[2] The firm filed a motion to strike a portion of the trustees' reply brief, which, it contends, improperly contains an unpreserved argument made for the first time on reply. However, the argument in question—that a court does not have authority to order payment of attorney fees that are permissible under ORS 125.095(1)— relates to the meaning of ORS 125.095, a statute whose proper interpretation is otherwise at issue in this case. At oral argument, the firm conceded, and we agree, that this court has an obligation to properly interpret the statute regardless of the arguments made by the parties. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, [the] court is responsible for identifying the correct interpretation, whether or not asserted by the parties."); *Nakashima v. Board of Education*, 204 Or App 535, 548, 131 P3d 749, *adh'd to on recons*, 206 Or App 568, 138 P3d 854 (2006), *aff'd*, 344 Or 497, 185 P3d 429 (2008) ("[R]egardless of the parties' arguments, we are obligated to construe the statute correctly."). Accordingly, the motion to strike is denied, and we will consider the assertions in the reply brief as appropriate.

[3] The notice of appeal in this case was filed before the effective date of the 2009 amendments to ORS 19.415. *See* Or Laws 2009, ch 231, § 3. Accordingly, the 2007 version of the statute applies, and we exercise *de novo* review in this case.

they deemed necessary or advisable to provide for Erna's health care, support, and maintenance, and to allow her to maintain her standard of living. Under the provisions of the trust, in determining whether Erna was incapacitated, such that the successor cotrustees would assume control of the trust, the fact of incapacity was to be "conclusively determined" by unanimous agreement of Natalie, Erick, and the written statement of Erna's personal or treating physician. Pursuant to section 7.3 of the trust, Erna "shall have the right to remove a trustee and appoint a successor trustee at any time, and this power shall take priority over all other rights" granted in paragraph 7 of the trust. The trust held virtually all of Erna's assets, including several pieces of real property along with liquid assets.

In spring of 2006, Erna, then 90 years old, was diagnosed with Alzheimer's disease and, in April of that year, her physician provided a written statement confirming the diagnosis and stating that, due to the illness, Erna was "incapable of reliably managing her own financial and business affairs." Erick and Natalie then executed a Certification of Trust and began acting as cotrustees of the trust.

Soon thereafter, Erna's daughter Inessa moved into Erna's home to care for her. Inessa was upset to learn that Erick and Natalie had become the trustees, and contacted Rubenstein, the attorney who had drafted the trust for Erna. Rubenstein informed Inessa that, pursuant to her mother's estate planning documents, Inessa had "no legal authority over [her] mother's health care or financial or legal matters." Several weeks later, in mid-June 2006, Inessa met with Wilkinson, an attorney at the firm. Following that meeting, Wilkinson wrote to Rubenstein, stating that he had "been contacted by Inessa Derkatsch on behalf of Erna regarding certain matters that Erna was concerned about[.]" Among those matters, Erna was concerned that she would be moved to a care facility in New York and was "concerned about what the trustees have been doing with her assets." He also asked Rubenstein to talk with Erna and give his "opinion as to whether she has capacity." After talking with Erna, Rubenstein indicated that she probably had capacity.

In November 2006, Erna executed a document removing Erick and Natalie as trustees and appointing in their place Oregon Pacific Bank Company, a neutral third-party trustee. Wilkinson sent a letter informing Erick and Natalie that he had met with Erna and that Erna had also met with "a trust officer at Oregon Pacific Bank Company," and that they were "of the opinion that [Erna] has full capacity to handle her affairs again and accordingly she has instructed me to have you removed." The letter instructed Erick and Natalie to contact the new trustee by November 22, 2006, "with respect to transferring the assets and records of the trust" and to provide an accounting no later than December 29, 2006, and threatened legal action if they failed to comply. Erick and Natalie, through an attorney, responded with a letter to Wilkinson stating that they believed that Erna was being unduly influenced by Inessa and that, in the absence of a written statement from Erna's physician, "which attests to [Erna's] renewed capacity and ability to manage her business affairs," they would not turn over management of the trust. However, they agreed to prepare an accounting. On December 12, 2006, the law firm filed the financial abuse case against Erick and Natalie on Erna's behalf seeking an accounting, an order requiring Erick and Natalie to turn over all trust assets and records to a neutral third-party trustee, treble damages, and attorney fees. During the course of the financial abuse case, Erick and Natalie did not turn control of the trust assets over to a third-party trustee.

Nearly a year later, in October 2007, Erna was deposed as part of the financial abuse case. At that time, she identified her signature on the document removing Erick and Natalie as trustees, but did not remember signing it. In addition, Erna did not remember that she was suing Erick and Natalie and, indeed, believed that she had never sued anyone. She stated that she wanted "to have peace and everything right between the children and" herself. Following Erna's deposition, in October 2007, the firm sought and obtained the appointment of a guardian ad litem, Dorzinsky, for Erna in the financial abuse case.

Inessa also was deposed over the course of two days in October 2007, and it was her conduct during those depositions that led to the initiation of guardianship proceedings for

Erna. As noted, since 2006, Inessa had been living with and providing care for Erna. On the second day of Inessa's deposition, at approximately 6:00 in the evening, it was discovered that Inessa had left Erna waiting in a locked car for hours. Erna was found in the car after one of the attorneys involved in the deposition overheard several passersby reporting to the front desk that they had observed an "elderly woman [who] was in a car by herself crying out for help[.]" When she was found, Erna had had nothing to drink and her oxygen "had seemingly expired." Paramedics were called and Erna was transported to the hospital. After Inessa tried to enter her mother's room in the emergency department and refused to leave the area, counsel for both parties obtained a restraining order to prevent Inessa from contacting or attempting to contact Erna.

After that incident, this protective proceeding was initiated by the filing of a petition seeking the appointment of professional guardians/conservators (the Raineys). Erick and Natalie objected to the appointment of the Raineys, as did Irina, Erna's daughter who lived overseas. Erick and Natalie also sought to be appointed as guardians/conservators. After a hearing and after also receiving a report from the court visitor, the court found that Erna was both an incapacitated person and financially incapable and appointed the Raineys as temporary guardians/conservators for a period of 30 days. At that time, the court permitted Dorzinsky, the guardian ad litem who had been appointed in the financial abuse case, to withdraw, and, as part of its limited judgment, the court ordered the Raineys to "assess and evaluate [the financial abuse case] and to direct counsel in [that c]ase as to its prosecution, dismissal, or other resolution[.]"

Thereafter, the Raineys requested an accounting from the trustees, who then provided financial information that the Raineys considered to be incomplete. In addition, the firm provided the Raineys with an estimate of how much it would cost to take the financial abuse case through trial. The firm indicated that it had incurred $42,500 in unpaid fees up to that point, and estimated that future fees would be between $16,560 and $65,520, predicting that "the fees in this case will range in the middle to the upper end" of that

estimate. The firm noted that the elder financial abuse statute "would allow Erna to recover part or all of her attorney's fees in the event she were successful" and that the trustees would not have a reciprocal right to recover their fees if Erna's case did not succeed. The amount at issue in the trust case, according to the firm, was $600,000—treble damages on the $200,000 in liquid assets held by the trust. However, the firm's

> "instructions from Erna were that she simply wanted a neutral trustee appointed so that her children would quit fighting. The claim for elder financial abuse was asserted to give us a claim to do so, and also some negotiation power in the form of the trebled damages. We do not believe that Erna desires us to obtain a judgment for the $600,000 at trial."

Because "of the lack of [sufficient] information" regarding the trust assets, the Raineys directed the firm to proceed with the financial abuse case.

Through her attorney in the guardianship proceedings, Erna objected to the appointment of Erick and Natalie as guardians and, after Inessa filed a petition seeking to be appointed as a coguardian with the Raineys, Erna objected to Inessa's appointment as well. In November 2007, following a settlement conference, a stipulated limited judgment was entered appointing the Raineys as guardians. Eventually, pursuant to a stipulated order, Erna went to live with Natalie in California.

At the same time that they entered into the stipulation that the Raineys be appointed as Erna's guardians, the parties settled the financial abuse case. On the date set for trial, the parties informed the court that, as part of the settlement, plaintiff had agreed to dismiss the financial abuse case with prejudice. In addition, the parties agreed that there was no prevailing party and that the issue of attorney fees could be presented separately. Under the terms of the settlement, each party could object to the right of the other party to recover attorney fees or to the reasonableness of any fees sought.

Subsequently, the firm filed motions in both the financial abuse case and the guardianship proceeding seeking payment of its attorney fees. The motion in the guardianship proceeding requested that the court approve attorney fees in the amount of $91,044.50 and costs of $12,221.88 and authorize payment of those amounts "from the protected person's resources, including her revocable trust[.]" The motion also alerted the court that a motion seeking "[e]ssentially the same fees, costs and disbursements" was being filed in the financial abuse case and requested a joint hearing to be held in both cases in the event that there were objections to the fees and costs sought. The trustees objected, asserting that fees were not allowable under ORS 125.095 and, specifically, that "entitlement to attorney fees and costs incurred in the prosecution of separate civil litigation is not a matter appropriate for determination in" the guardianship proceeding.

After a joint hearing for the motions filed in both the financial abuse and guardianship cases, the court entered a supplemental judgment in the guardianship case in which it made the following findings: (1) "there was sufficient benefit to [Erna] to justify allowing an award of reasonable and necessary fees to [the firm]"; (2) although it was dismissed pursuant to a settlement agreement, the financial abuse case benefitted Erna because it "brought an independent third party into the situation" and "allowed further access and accounting" with regard to the trust. Having determined that it had authority to authorize the fees pursuant to ORS 125.095 and that the firm's work "was rendered on behalf of the Protected Person," the court allowed a reduced fee award in the amount of $58,210.64 to be paid from the trust. The trustees appeal from that supplemental judgment.

According to the trustees, the court erred in awarding fees and costs to the firm under ORS 125.095 for several reasons. In their view, ORS 125.095 "does not contain any language that gives the probate court the authority to 'award' attorney fees, particularly in a situation such as this, where the attorney fees were generated" in the context of a civil proceeding by a law firm that did not represent anyone in the protective proceeding. Furthermore, and in any event, the trustees contend that any fees incurred before October 18,

2007, are not allowable because Erna was not yet a "protected person" within the meaning of the statute. As to the fees and costs incurred after the time Erna became a protected person, the trustees argue that the firm's services did not benefit Erna and, therefore, the fees do not relate to "services rendered on behalf of the * * * protected person" as required by ORS 125.095(1). The firm responds that the statute authorizes the award of fees in this case for the work done both before and after Erna became a protected person. It also asserts that the services it provided benefitted Erna.

Initially, the parties' arguments present these questions regarding the proper interpretation of ORS 125.095: whether, in light of the text of ORS 125.095, the probate court has authority to order payment of attorney fees under the circumstances presented here and, if so, whether the statute permits the court to order payment of the firm's fees for work done before Erna was a protected person. We resolve those questions of law by examining the statutory text and context, any pertinent legislative history, and, if necessary, applying maxims of construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

We begin by observing that, as a general matter, a court in a protective proceeding has broad powers. It may appoint guardians, conservators, temporary fiduciaries, and "any other fiduciary necessary to implement a protective order under ORS 125.650." ORS 125.010(3). Furthermore, "[i]n addition to * * * or in lieu of appointing a fiduciary, the court may enter any other protective order in a protective proceeding in the manner provided by ORS 125.650."[4] ORS

---

[4] ORS 125.650 provides:

"(1) The court may enter protective orders without the appointment of a fiduciary or in addition to appointment of a fiduciary. A petition for a protective order that does not seek the appointment of a fiduciary is subject to all requirements prescribed for petitions for appointment of a fiduciary. A court may enter a protective order other than appointment of a fiduciary only upon a determination that grounds exist for the appointment of a fiduciary.

"(2) In issuing protective orders under this section, the court may exercise any power that could be exercised by a guardian or conservator in a protective proceeding, or any power that could be exercised by the court in a protective proceeding in which a fiduciary is appointed.

125.010(4). A protective order is "an order of the court appointing a fiduciary or any other order of the court entered for the purpose of protecting the person or estate of a respondent or protected person." ORS 125.005(8).[5] Furthermore, pursuant to ORS 125.095,

"(1)  Funds of the protected person may be used to pay reasonable compensation to any visitor, attorney, physician, fiduciary or temporary fiduciary for services rendered in the protective proceeding or for services rendered on behalf of the fiduciary or protected person.

"(2)  Prior court approval is required before the payment of the fees of any visitor or physician if the fees are incurred for services relating to proceedings arising out of the filing of an objection to a petition or motion.

"(3)  Prior court approval is required before payment of compensation to a fiduciary or to the attorneys for a fiduciary, except that prior court approval is not required before

"(3)  Before entering a protective order under this section, the court shall consider the interests of creditors and dependents of the protected person and whether the protected person needs the continuing protection of a fiduciary.

"(4)  The court may appoint a fiduciary whose authority is limited to a specific time and whose power is limited to certain acts needed to implement the protective order. A fiduciary appointed under this subsection need only make such report to the court as the court may require.

"(5)  In addition to any other protective order that may be entered under this section, the court may authorize, direct or ratify:

"(a)  Any transaction necessary or desirable to achieve any security, service or care arrangement meeting the foreseeable needs of the protected person, including but not limited to payment, delivery, deposit or retention of funds or property, sale, mortgage, lease or other transfer of property, entry into an annuity contract, a contract for life care, a deposit contract, a contract for training and education, or addition to or establishment of a suitable trust.

"(b)  Any contract, trust or other transaction relating to the protected person's financial affairs or involving the estate of the person if the court determines that the transaction is in the best interests of the protected person."

[5] ORS 125.025 also lists other specific areas of court authority in protective proceedings. Among other things, those powers include the ability to act "in any manner it deems appropriate to determine the condition and welfare of the respondent or protected person and to inquire into the proper performance of the duties of the fiduciary"; to compel the attendance of any person who may have knowledge about the person or estate of the respondent or protected person; to appoint counsel, investigators, visitors, and experts; and in cases in which the court finds that a conservator should be appointed, to "exercise all the powers over the estate and affairs of the protected person that the protected person could exercise if present and not under disability, except the power to make a will."

payment of compensation to a conservator if the conservator is a trust company that has complied with ORS 709.030, or if the conservator is the Department of Veterans' Affairs."

A "protected person" is "a person for whom a protective order has been entered." ORS 125.005(7).

As noted, the trustees contend that the "permissive language" used in ORS 125.095(1) merely "*allows* one in control of a protected person's assets * * * to pay physicians, attorneys, and fiduciaries reasonable compensation for services rendered," and therefore the court in this case did not have authority to order that payment be made for services that the firm rendered in the financial abuse case. (Emphasis in original.) The trustees point out the distinction between subsection (1) and subsections (2) and (3) in support of their argument—that is, although subsections (2) and (3) require court approval for certain compensation, subsection (1) merely authorizes payment for services from the funds of a protected person without expressly stating that the court may order such payments to be made. We are not persuaded.

By its plain language, ORS 125.095 clearly provides that a protected person's funds may be used to pay, among other things, reasonable compensation to an attorney who provided services on behalf of the protected person. Although prior court approval is not automatically required under subsection (1) in order for such payment to be made, as is required under certain conditions enumerated in subsections (2) and (3), that does not suggest that the court is somehow disabled from ordering that such payment be made as appropriate. The power of the court to order that compensation authorized pursuant to ORS 125.095(1) be paid is implicit in the statute. Furthermore, the statutory scheme also explicitly contemplates that the court will, at least in some instances, make decisions on such payments. ORS 125.030 lists the decisions on which a limited judgment may be entered, and includes decisions "on a payment that is authorized or subject to approval under ORS 125.095." In other words, a limited judgment may be entered following a court's decision regarding payments under any part of ORS 125.095—whether the payments are merely authorized

under ORS 125.095(1) or are subject to approval by the court under ORS 125.095(2) and (3). In sum, we think it clear from the statute's text and context that the court in this case had authority to order payment for services provided by an attorney on behalf of the protected person. Accordingly, we reject the trustees' contentions with respect to that issue.

The trustees next contend that, in any event, ORS 125.095(1) does not authorize the payment of at least a portion of the attorney fees at issue in this case. Specifically, according to the trustees, those fees incurred before the initiation of the protective proceeding cannot properly be paid pursuant to ORS 125.095(1) because the services at issue were not "rendered on behalf of the * * * protected person." The firm responds that, because a protective order was entered in this case and Erna is, therefore, a protected person, all services it rendered were on behalf of a protected person as that term is used in ORS 125.095(1), "including fees for services rendered on behalf of Erna before she became a protected person." On that point, we agree with the trustees.

As noted, ORS 125.095(1) provides that funds of the protected person may be used to pay an attorney for services rendered in the protective proceeding or on behalf of the protected person. Thus, an attorney who provided services in the protective proceeding itself may be compensated under that section. *See also* ORS 125.005(9) (defining "protective proceeding" as "a proceeding under this chapter"). Further, even if the services were not rendered in the protective proceeding, an attorney who provides services "on behalf of the * * * protected person" may be compensated pursuant to ORS 125.095(1). However, ORS 125.005(7) defines a "protected person" as someone "for whom a protective order *has been entered*." (Emphasis added.) Pursuant to that definition, after an order "appointing a fiduciary or any other order entered for the purpose of protecting the person or estate of a respondent" has been entered, ORS 125.005(8) (defining "protective order"), the person becomes a protected person. On the other hand, "a person for whom entry of a protective order is sought" is merely a "respondent." ORS 125.005(10). ORS 125.095(1) authorizes payment to an attorney for services provided on behalf of the former (that is, "the protected

person"), but not the latter (that is, "a person for whom entry of a protective order is sought").

As the trustees correctly point out, for much of the time that the financial abuse case for which compensation was sought was being litigated, Erna clearly did not fall within the definition of a "protected person." The guardian-ship proceedings were not initiated until after the financial abuse case had been pending for about a year, and during that period of time Erna was not a person for whom the court had entered a protective order. Payment for the services ren-dered in the financial abuse case before Erna became a pro-tected person was not authorized under ORS 125.095(1).[6] Accordingly, because part of the compensation sought by the firm and allowed by the court was for services rendered in the financial abuse case before Erna became a protected person, this case must be remanded.

The trustees next contend that, as to the firm's serv-ices in the financial abuse case after Erna became a protected person, the trial court erred in ordering compensation to be paid because the services were not rendered on behalf of the protected person because they did not "benefit" her. The firm responds that "ORS 125.095(1) only requires that services be rendered on behalf of the protected person; it does not require that the court find [that] the services rendered result in a specific benefit to the protected person." Furthermore, according to the firm, even if ORS 125.095(1) does make pay-ment for services contingent on a benefit being conferred to the protected person, "the record in this case demonstrates that the services rendered by [the firm] did confer benefits to Erna."

---

[6] We reject the firm's contention that those fees are allowable in all events because the Raineys "ratified" the firm's prior work when they authorized the firm to continue with the financial abuse case and because the benefit from the financial abuse case accrued after Erna became a protected person. Again, the scope of ORS 125.095(1) is clear in that it authorizes payment for services that are rendered on behalf of the protected person. The fact that the Raineys determined that the finan-cial abuse case should continue after Erna became a protected person does not change the fact that services by the firm before that point were not "rendered on behalf of [a] protected person." Likewise, assuming that the benefit of the firm's prior work accrued after Erna became a protected person, that benefit does not bring that earlier work within the scope of ORS 125.095(1).

We begin by observing that, on its face, ORS 125.095(1) does not make payment of compensation for services rendered contingent on a finding that the services conferred a benefit on the protected person. Instead, the statutory provision requires only that the services were "rendered on behalf of the * * * protected person." We reject the trustees' contention that, where the services at issue result in no benefit to the protected person, they cannot be said to have been rendered on behalf of that person.

Further, as we have described, when it appointed the Raineys as Erna's guardians, thereby making her a protected person, the court specifically directed them to evaluate the financial abuse case to determine whether it should proceed. The Raineys conducted that evaluation and, even with an estimate that the fees to continue that case could be significant, decided to allow the case to go forward. One of the reasons that the Raineys made that decision was that they considered the financial information that the trustees had provided to be incomplete. Services provided under those circumstances were provided on behalf of Erna.

Furthermore, even assuming that compensation may be paid only where some benefit accrues to the protected person, we agree with the trial court that the firm's services in the financial abuse case did provide some benefit to Erna.[7] Specifically, we agree with the trial court's observations that the full accounting and production of financial documents that the Raineys eventually obtained from the trustees was, at least in part, a result of the firm's efforts in the financial abuse case and that that benefitted Erna. In sum, because

_____

[7] In *Naito v. Naito*, 99 Or App 608, 783 P2d 1012 (1989), which was decided under a former version of the guardianship statutes, we affirmed the trial court's denial of attorney fees to the sons of the protected person. Specifically, the sons sought to recover from their father's estate attorney fees that they expended seeking and obtaining the removal of their mother as the conservator of the estate. We observed that we had previously held "that attorney fees 'may be awarded to a party who, at his own expense and not for his sole benefit, successfully brings suit to benefit an estate or trust as a whole.' " *Id.* at 611 (quoting *Jones v. Kuhn*, 59 Or App 135, 140, 650 P2d 999 (1982)). We concluded that, because the evidence did not demonstrate that the sons' actions benefitted the estate, the trial court properly denied their request for fees. *Id.* at 612. The standard set forth in *Naito* is not applicable to the circumstances presented here, where the compensation at issue is authorized by statute and is sought for services rendered to the protected person herself.

the services provided by the firm in the financial abuse case after Erna became a protected person were "services provided on behalf of the * * * protected person" within the meaning of ORS 125.095(1), we conclude that the trial court could properly order payment of compensation for those services under the statute.

Finally, in their second assignment of error, the trustees make a number of arguments regarding the amount of compensation allowed by the trial court. Specifically, the trustees assert that the trial court abused its discretion in determining, under the facts of this case, that compensation to the firm

"in the amount of $58,210.64 * * * pursuant to ORS 125.095 was reasonable, because the findings of fact and conclusions of law of the trial court do not justify the amount awarded, the trial court failed to address trustees' objections and properly analyze the factors set forth in ORS 20.075 in making the award, and the amount awarded grossly exceeded the value of any benefit to the protected person obtained by the legal services."

(Capitalization omitted.) In light of our conclusion that the case must be remanded to the trial court because ORS 125.095(1) did not authorize the payment of compensation for services provided by the firm before Erna became a protected person, we decline to address the trustees' contentions in their second assignment of error. Instead, the trial court may consider those issues, as appropriate, on remand.

Reversed and remanded.